WIGGINTON, Judge.
Plaintiff in whose favor a verdict was rendered by a jury after trial has appealed a final judgment setting aside the jury’s verdict and rendering judgment in favor of defendant. It is appellant’s position that the trial court erred in holding as a matter of law that the evidence is insufficient to establish appellee’s liability for the-damages sustained by plaintiff as a result, of the injuries he received while an employee in the service of appellee.
Defendant operates a railway terminal in-Jacksonville which is used by several interstate railroad carriers, including the Southern Railway System. On the critical' date involved in this action appellant was-employed by appellee as a hostler’s helper whose duty it was to assist in .the inspection and moving of a train of the Southern-Railway System which had completed its. run from Atlanta and had been “parked”' by the train crew on the tracks in appel-lee’s terminal. Appellant, and the hostler whom he was assisting, boarded the train preliminary to moving it to another location within the terminal yard for washing, servicing, and “readying” for its return trip to Atlanta the next morning. One of appellant’s duties consisted of releasing the-hand brake on the locomotive which had' been set by the train crew at the time the- *347 train was brought to a stop at the completion of its run. For some reason not dis■closed by the evidence, the wheel which released the brake by turning counterclockwise was stuck or frozen tight. Appellant’s unsuccessful effort to release the brake re■sulted in an injury to his back which caused the damages for which this suit was brought. It was only by beating on the wheel with a wrench that the hostler was -able to free the wheel so it could be turned.
After the jury rendered its verdict in ifavor of appellant for the damages suffered by him as a result of the injuries he •sustained in the manner described above, appellee filed its motion to set aside the verdict and for judgment in its favor on four stated grounds. It was upon the first three grounds of appellee’s motion that the trial court based its final judgment appealed herein.
Plaintiff’s cause of action is predicated upon the statute popularly referred to as the Federal Safety Appliance Act and ■which provides as follows:
“It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, * * ”[1]
In construing the above-quoted statute the Supreme Court of Missouri in the case of Brady v. Wabash Railway Company[2] said:
“ * * * In reaching this conclusion, we fully recognize the rule of absolute liability of a common carrier engaged in interstate commerce for injuries caused by violation of this and the similar Safety Appliance Acts. Such liability is not dependent on negligence, nor is it excused by the use of reasonable or even the highest degree of care in hauling or using cars not equipped with secure handholds or grabirons on the roof at the top of ladders used to climb upon such cars. All the plaintiff needs to prove in this respect is that no handhold was at such place, or, if there, it was not secure; and this was fully shown and is conceded in this case. * * * ”
The trial court’s order setting aside the verdict and entering judgment in favor of the defendant is based upon the following recited findings and conclusions, to wit:
“The evidence is insufficient to fasten liability for plaintiff’s injury upon Jacksonville Terminal Company. It did not ‘use or permit to be used on its line’ a locomotive that was not in ‘proper condition’; and the locomotive involved was not ‘employed in the active service’ of the defendant at the time of plaintiff’s injury. On the contrary, the locomotive merely ‘stood’ in defendant’s terminal at the place it was left by its crew and was awaiting ‘grooming and servicing’ for its next trip in the ‘active service’ of its owner, the Southern Railway System. Consequently, there was no violation of the Federal Safety Appliance Act (45 U.S. C.A. 23) by Jacksonville Terminal Company; and if there was an ‘unnecessary peril to life or limb,’ the defendant is not legally responsible for it.”
We first direct our attention to the finding by the trial court that appellee did not use or permit to be used on its line a locomotive that was not in proper condition, and the locomotive involved was not employed in the active service of appellee at the time of plaintiff’s injury. The record reveals that the primary function performed by appellee for the interstate railroad carriers entering its terminal is to *348 move their trains from the platform where they are left by the train crew to another location within the terminal yard in order that the cars may be washed and cleaned and the locomotive serviced preliminary to being relocated on the proper track and at the proper place for reloading prior to its departure to its next point of destination. Plaintiff was assisting in the moving of the train as an employee of appellee when he was injured. In order to move the train, it was necessary for plaintiff, in the performance of his duties, to release the hand brake on the locomotive. It was while in the process of performing this duty that he injured his back.
The trial court concluded that since the train was in a stationary position, it was not “in use on defendant’s line” nor was the locomotive “employed in the active service of defendant” at the time of plaintiff’s injury and, therefore, the statute was inapplicable. This position cannot be sustained either by logic or the authorities cited. A similar situation as that present in this case was shown by the record in the case of Brady v. Terminal Railroad Association.[3] In that case the defendant terminal association had received the train from the interstate railroad carrier for the purpose of cleaning and servicing it and delivering it over to the Wabash Railway Company who, after inspection and acceptance, was to move it out of the terminal yard to its destination. The plaintiff was an employee of the terminal association, and was injured while the train was in the custody and control of the association and before it had been inspected and accepted by Wabash. Under the foregoing facts it was held that the terminal association was liable for the defective condition of the train which proximately caused plaintiff’s injuries. In that case, as in the case sub judice, the train was in a stationary position on the tracks of the terminal at the time plaintiff was injured. Under the circumstances the Supreme Court held that the Federal Safety Appliance Act was applicable to the cause of action, and implicit in the decision is the finding that the association used or permitted to be used on its line a railroad car not in proper condition, and at the time of plaintiff’s injury the defective equipment was employed in the active service of the terminal association.
Appellee has cited and the trial court relied upon three decisions from other jurisdictions in support of the conclusion recited in the judgment appealed.[4] These cases do not support the trial court’s findings and conclusion for the following reasons, to wit: (1) in each of the cited cases the suit was brought by the injured employee against the interstate railroad carrier who owned the train, and not against the terminal company or association in whose terminal yard the injury occurred; (2) in each of the cited cases the locomotive or car on which plaintiff was injured had been withdrawn from the service of the defendant interstate railroad carrier and was not in use on the defendant’s line at the time of injury; and, (3) in each of the cited cases the defective locomotive or railroad car on which plaintiff was injured was in the complete custody and control of the terminal company in the process of being repaired or serviced for further use, and had not been returned to and accepted by the defendant railroad carrier at the time of injury.
Addressing ourselves to the conclusion reached by the trial court that if there was an “unnecessary peril to life or limb,” the defendant is not legally responsible for it, we feel it sufficient to say that whether the defective hand brake was in a proper condition and safe to operate in *349 the service of appellee, or whether it could be employed in the active service of appel-lee without unnecessary peril to life or limb, all as proscribed by the statute, and whether the defective hand brake was the proximate cause of plaintiff’s injuries, were questions which were properly submitted to the jury for its determination. This is the conclusion reached on similar facts by Judge Learned Hand in the case of Cusson v. Canadian Pacific Railway Company.[5]
In the case of Cassano v. Atchison, T. & S. F. Ry. Co.[6] a railroad employee sued his employer under the Federal Safety Appliance Act for an injury to his back which occurred when he over-exerted himself by pulling and tugging at a release lever in a futile attempt to release a wheel brake on a railroad car which had been set too tight by another employee. In sustaining a recovery by the employee in the trial court the Supreme Court held that the questions of whether the braking mechanism was defective under the circumstances within the purview of the act sued upon, and whether the defective braking mechanism was the proximate cause of the injury sustained by the plaintiff, were questions properly submitted to and resolved by the jury on trial. In the case sub judice the jury resolved these issues in favor of plaintiff, and we find in the record substantial evidence to support the verdict. It is our judgment that the trial court erred in entering its order setting aside the verdict and rendering judgment in favor of defendant.
In concluding our discussion with respect to the issues involved on this appeal it is appropriate to note that appellee terminal company is a railway corporation under the laws of Florida, and is subject to all laws of the state and rules and regulations of both federal and state regulatory bodies having supervision of railway companies. For this reason there can be no question but that the Federal Safety Appliance Act is as applicable to the operation of appellee corporation as it is to any interstate railway carrier utilizing appellee’s terminal facilities in Jacksonville.
At first blush it might appear that the rule of absolute liability imposed upon appellee terminal company under the Federal Safety Appliance Act works an unjust and harsh result. Such argument is appealing for the reason that the terminal company neither owns, possesses, maintains nor controls the locomotives and cars brought into its terminal yard by the interstate railway carriers and therefore has no prior opportunity of knowing about the existence of any defects in or unsafe conditions of the locomotives and railroad cars delivered to it for handling. It therefore cannot be said that the terminal company is negligent in failing to correct defects of which it has no knowledge prior to the time its employees are required to go upon the locomotives and cars and move them to different locations within the terminal yard for repairs and servicing. Be this as it may, the liability imposed by the act of Congress under which this action is brought and maintained is not conditioned upon proof of negligence and is the only protection terminal employees have for economic losses suffered by them from injuries sustained as a proximate result of unsafe locomotives, cars and appliances with which such employees are required to work. So long as appellee enjoys the status of a railway company, it must assume the burdens and obligations imposed upon such companies by the various acts of Congress and laws of the State of Florida designed to’ protect its employees against economic losses which occur during the course of their employment, and which result from injuries, caused by defective and unsafe equipment.
We have given consideration to that section of our State Constitution which provides that the Supreme Court may review by certiorari any decision of a District Court of Appeal that passes upon *350 a question certified by the District Court of Appeal to be of great public interest.[7] In the case of Zirin, etc. v. Charles Pfizer & Co.[8] the Supreme Court interpreted the •above-mentioned section of the Constitution as follows:
“ ‘ * * * Certification is plainly a condition precedent to any review here upon this ground. A negative decision by the district court in the exercise of its discretion in a given case would ■certainly present no basis for review under the quoted language. Similarly, where a decision involves a question which has, incontrovertibly, been “certified by the district court of appeal to 'be of great public interest,” then the specified condition has been fully met. No review or redetermination of the point is necessary or even proper unless by some stretch of reasoning the exercise of the power of certification could be found reviewable under related clauses defining other areas of appellate jurisdiction of this Court.’ ”
The points involved on this appeal present questions of first impression in Florida, there being no controlling precedent rendered by any appellate court of this state 'bearing on the questions decided. The outcome of the issues involved herein will have •a profound effect upon the economic well-"being of every employee engaged in the •service of interstate railroad carriers operating in Florida, as well as the welfare of each such carrier in its relationship and obligation to its employees. We are of the view that this decision passes upon a question of great public interest within the purview of that section of the Constitution mentioned above. It will therefore 'be our purpose to file our certificate of ;great public interest contemporaneously •with the filing of this opinion in order that the parties may, if they so desire, seek review by certiorari of this decision.in the Supreme Court. Such procedure will produce a rule of law having state-wide application and additionally -will insure uniformity in the decisional law of our state, a condition in which the Supreme Court has recently manifested a keen and zealous interest.[9]
The judgment appealed is reversed and the cause remanded with directions that the jury’s verdict be reinstated and judgment be rendered in favor of plaintiff.
STURGIS, C. J., and RAWLS, J, concur. '

. 45 U.S.C.A. p. 120, § 23.

. Brady v. Wabash Ry. Co., (1932) 329 Mo. 1123, 49 S.W.2d 24, 83 A.L.R. 655.

. Brady v. Terminal Railroad Association, (1938) 303 U.S. 10, 58 S.Ct. 426, 82 L.Ed. 614.

. Brady v. Wabash Ry. Co., supra note 2; Lyle v. Atchison, T. & S. F. Ry. Co., (7th Cir. 1949) 177 F.2d 221; Tisneros v. Chicago & N. W. Ry. Co., (7th Cir. 1952) 197 F.2d 466.

. Cusson v. Canadian Pacific Railway Company, (2nd Cir. 1940) 115 F.2d 430.

. Cassano v. Atchison, T. & S. F. Ry. Co., (1952) 362 Mo. 1207, 247 S.W.2d 786.

. Florida Constitution, Article V, Section 4 (2), F.S.A.

. Zirin, etc. v. Charles Pfizer & Co., Inc., (Fla.1961) 128 So.2d 594.

. Foley v. Weaver Drugs, Inc., Fla., 177 So.2d 221. Opinion filed April 28, 1965.