## CHICAGO GREAT WESTERN RAILROAD COMPANY *v.* SCHENDEL, ADMINISTRATOR OF THE ESTATE OF RING, DECEASED.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 422.   Argued January 6, 1925.—Decided March 2, 1925.

1. Where a freight car with defective automatic coupler was moved with the train from the main line to a siding to be cut out and left there, *held* that the use, movement or hauling of the car, within the meaning of the Safety Appliance Act, had not ended when a brakeman went between it and the next car to detach the chain and was injured by the movement of the car by gravity as the engine was cut off; that he was within the protection of that statute; and, under the Employer's Liability Act, his assumption of the risk, or contributory negligence in going between the cars with knowledge of the danger and without notice to the engineer did not bar his right of action. P. 291.

59 Minn. 166, affirmed.

CERTIORARI to a judgment of the Supreme Court of Minnesota which affirmed a judgment for damages recovered against the railroad company for personal injuries of a brakeman resulting in death.

*Mr. Asa G. Briggs,* with whom *Mr. Charles H. Weyl, Mr. Allan Briggs* and *Mr. Allen V. Junkin* were on the briefs, for petitioner.

The facts do not bring the case within the Safety Appliance Act. The car had come to rest on the sidetrack and had ceased to be " used " as contemplated by the act.

The association of the word " used " with the words " hauled or permitted to be hauled on its line " clearly indicates that the use must be associated with or related to the transportation or hauling of a crippled car, either in transportation from place to place or of the car from the place where found to be defective or insecure to the

place of repair. It does not mean such use of the car elsewhere or in other relation than such hauling or movement. *McCalmont* v. *Penn. R. Co.,* 273 Fed. 231; s. c. 283 Fed. 736.

Let us examine the immediate facts of the case. The draw-bar had pulled out on the main line. The car was then chained up and hauled onto the sidetrack, to be cut out of the train. During this movement nothing occurred. The car was safely hauled to a place on the siding where it was to remain. Having so been placed on this sidetrack, it ceased to be " used " by the carrier. From this time on, then, the Safety Appliance Act did not govern the case.

If intending to permit a car to stand still constituted a violation of the act, the company could have no alternative but to violate. If they hauled the car they violated the act, and if they did not haul the car they violated the act. See *Boldt* v. *Penn. R. Co.,* 245 U. S. 441.

The defective draw-bar did not proximately contribute to the injury in this case. *Gilman* v. *Central Vermont Ry.,* 107 Atl. 122; *McCalmont* v. *Penn. R. Co., supra; Great Northern Ry. Co.* v. *Wiles,* 240 U. S. 444; *Rittenhouse* v. *St. L. etc. Ry. Co.,* 252 S. W. 945; *Davis* v. *Hand,* 290 Fed. 73; *Phillips* v. *Penn. R. Co.,* 283 Fed. 381.

The deceased would not have been in the position he was except for the defect in the coupler. Beyond this there is no connection between the defective coupler and his injuries. *Douglas* v. *Washington Terminal Co.,* 298 Fed. 199.

The probability that an injury would be caused by the alleged violation of the Safety Appliance Act was so unlikely, under all the circumstances, that it could not reasonably be foreseen. *Lang* v. *New York Cent.,* 255 U. S. 455. *Otos Case,* 239 U. S. 42, distinguished.

*Mr. Tom Davis,* with whom *Mr. Ernest A. Michel* was on the brief, for respondent.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

The Supreme Court of Minnesota affirmed a judgment in favor of respondent for damages resulting from the death of his intestate, Ring, fatally injured while in petitioner's service and while both were engaging in interstate commerce. The original action was based upon the Federal Employers' Liability Act, c. 149, 35 Stat. 65, 66, and the Safety Appliance Act of 1893, c. 196, 27 Stat. 531, as amended in 1910, c. 160, 36 Stat. 298, 299.

While the freight train upon which Ring served as brakeman was upon the main line at Budd, Iowa, a drawbar pulled out of a car. Thereupon the crew chained this car to the one immediately ahead. The engine pulled the whole train onto the adjacent siding, which lies on a gentle grade, and stopped. The intention was to detach the damaged car and leave it there. The plan was to cut off the engine, bring it around back of the train, remove the rear portion, couple this to the forward portion and move on. Acting under the conductor's direction, Ring asked the head brakeman to tell the engineer to proceed; and then, without the knowledge of either of the others, he and the conductor went between the crippled car and the next one, in order to disengage the connecting chain. While they were working there the engineer cut off the engine, the car ran slowly down the grade, and Ring, caught by the chain, suffered fatal injuries.

A rule of the company provided that employees should advise the engineer when they were going between or under cars and must know that he understood their purpose before they put themselves in any dangerous position. Ring gave no such warning, although familiar with the rule and with the grade upon which the train stood.

42684°—25——19

Petitioner insists: (1) The facts do not bring the case within the Safety Appliance Act since the car had come to rest on the side-track and had ceased to be "used," within the meaning of the statute. (2) The defective draw-bar did not proximately contribute to the injury. (3) The violation of the rule by Ring constituted negligence subsequent to and independent of the question of a defective safety appliance and was a proximate cause of the injury.

It is provided by the original Safety Appliance Act—

"Sec. 2. That on and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

The amendment of 1910 directs—

"Sec. 4. That any common carrier subject to this Act using, hauling, or permitting to be used or hauled on its line, any car subject to the requirements of this Act, not equipped as provided in this Act, shall be liable to a penalty of one hundred dollars for each and every such violation . . . *Provided*, That where any car shall have been properly equipped, as provided in this Act and the other Acts mentioned herein, and such equipment shall have become defective or insecure while such car was being used by such carrier upon its line of railroad, such car may be hauled from the place where such equipment was first discovered to be defective or insecure to the nearest available point where such car can be repaired, without liability for the penalties imposed by Section four of this Act, or Section six of the Act of March second, eighteen hundred and ninety-three, as amended by the Act of April first, eighteen hundred and ninety-six, if such movement is necessary to make such repairs and

such repairs cannot be made except at such repair point; and such movement or hauling of such car shall be at the sole risk of the carrier, and nothing in this Section shall be construed to relieve such carrier from liability in any remedial action for the death or injury of any railroad employee caused to such employee by reason of or in connection with the movement or hauling of such car with equipment which is defective or insecure or which is not maintained in accordance with the requirements of this Act and the other Acts herein referred to. . . ."

The Employers' Liability Act provides that in an action under it for injury or death of an employee, " such employee shall not be held to have assumed the risks of his employment [or to have been guilty of contributory negligence] in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

Former opinions have adequately explained the purpose of these enactments. *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Taylor,* 210 U. S. 281, 295; *Chicago, Burlington & Quincy Ry. Co.* v. *United States,* 220 U. S. 559; *St. Louis & San Francisco R. R. Co.* v. *Conarty,* 238 U. S. 243; *Texas & Pacific Ry. Co.* v. *Rigsby,* 241 U. S. 33; *Minneapolis & St. Louis R. R. Co.* v. *Gotschall,* 244 U. S. 66; *Lang* v. *New York Central R. R. Co.,* 255 U. S. 455; *Davis* v. *Wolfe,* 263 U. S. 239. *Louisville & Nashville R. R. Co.* v. *Layton,* 243 U. S. 617, must be understood as in entire harmony with the doctrine announced in *St. Louis & San Francisco R. R. Co.* v. *Conarty,* and not as intended to modify or overrule anything which we there said.

Under the circumstances disclosed, we think it clear that the use, movement or hauling of the defective car, within the meaning of the statute, had not ended at the time of the accident. To cut this car out of the train so

that the latter might proceed to destination was the thing in view, an essential part of the undertaking in connection with which the injuries arose.

The things shown to have been done by the deceased certainly amount to no more than contributory negligence or assumption of the risk, and both of these are removed from consideration by the Liability Act. When injured he was " within the class of persons for whose benefit the Safety Appliance Acts required that the car be equipped with automatic couplers and draw-bars of standard height. . . . His injury was within the evil against which the provisions for such appliances are directed." *St. Louis & San Francisco R. R. Co.* v. *Conarty, supra.* He went into the dangerous place because the equipment of the car which it was necessary to detach did not meet the statutory requirements especially intended to protect men in his position.

We find no material error in the judgment below, and it is

*Affirmed.*