**John HOLFESTER, Plaintiff-Appellee,**

v.

**The LONG ISLAND RAILROAD COMPANY, Defendant-Appellant.**

**No. 298, Docket 30148.**

United States Court of Appeals
Second Circuit.

Argued March 29, 1966.

Decided May 10, 1966.

Henry J. O'Hagan, New York City (Edward G. Dougherty and Peter M. J. Reilly, New York City, on the brief), for plaintiff-appellee.

William F. McNulty, New York City (George M. Onken, Jamaica, N. Y., on the brief), for defendant-appellant.

Before MOORE, FRIENDLY and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

The principal and determinative issue in this case is whether or not the facts bring it within the Boiler Inspection Act, 45 U.S.C. § 23. The jury could have found the facts to be as follows: About 7:25 p. m. in the evening of December 22, 1963, a train arrived at Jamaica station. One of its cars, an electric, self-propelled mail and baggage car, designated as #4207, was detached and placed on Track 3E of the train assembly yard for inspection. It was scheduled to leave again between 10:00 and 10:30 that night. After the plaintiff-appellee, Holfester, who was a car inspector for the defendant-appellant Railroad, had with Bargellini, another inspector assigned to work with him, completed the inspection of cars on Track 2E, which adjoined and was to two and one-half feet north of Track 3E, they turned their attention to car #4207. Holfester noticed that the fuse box on the truck at the northeast end of car #4207 was open about three-quarters of an inch at the top, that the latch or "keeper," used to keep the cover closed, was bent and off-center, and that a ribbon fuse, of the type used in the fuse box, was draped over the handle of

the outside cover of the box. The fuse hanging on the outside indicated to him that somebody else had worked on the fuse box, and he went to the other end of the car and called through the open door to Bargellini, who was then in the car to look in the cab for the customary shop tag describing the nature of the problem or the work to be done. Bargellini reported that he found none.

Holfester then walked back near the faulty fuse box, preparatory to going to the yardmaster's office to have someone de-energize the 650 volt third rail of Track 3E so that he could further examine the fuse box. As he was abreast of the fuse box, however, an explosion occurred in it which shot a big ball of flame through the top of the box, the cover of which was unfastened due to the faulty latch, and ignited Holfester's clothing. The noise of the explosion was heard by Bargellini, who was at that moment on the south side of the car. He immediately went around to the north side of car #4207 and saw that Holfester's clothing was afire and that smoke was coming from the fuse box. Holfester was removed to the hospital with extensive first, second, and third degree burns, the most crippling and severe of which were from the middle of his body, down his extremities, causing him to be permanently and seriously disabled.

The Railroad presented evidence from which it claims to have shown that there was discovered after the accident a pair of "car shoe slippers," used between the contact point and the third rail, as a part of the standard procedure in changing a fuse on a car standing on a live track, and that there was also found near the scene of the accident Holfester's flashlight, his hammer, screwdriver, portable operating handles and identification tag. It also presented expert testimony to show it was unlikely that such an accident could have occurred unless Holfester had inserted into the fuse box some tool or other object that would have conducted electricity. It also claimed to have proved that Holfester was negligent in setting out for the yardmaster's office by going east and, thus past the fuse box, when he could have more easily gone there by walking in a westerly direction.

The case was submitted to the jury with special interrogatories in order to require the jury to consider and decide, separately and independently, the issues under the Boiler Inspection Act and the issues under the Federal Employers' Liability Act.

The court charged on the applicability of the Boiler Inspection Act and the issues presented under the provisions of that Act, except that it reserved to itself the factual question of whether or not, within the meaning of the Act, the locomotive was "in use." It decided that it was, and so instructed the jury. The court also charged on the Federal Employers' Liability Act and, in doing so included, on the question of negligence, instructions on the doctrine of res ipsa loquitur.

In answer to the special interrogatories the jury found that the Railroad had violated the Boiler Inspection Act and that such violation was the proximate cause of the plaintiff's injuries. It found negligence on the part of the Railroad which proximately caused the plaintiff's injuries; and it also found that the plaintiff was contributorily negligent to the extent of 20%. It assessed damages in the amount of $250,000. Because the Railroad was found liable under the Boiler Inspection Act, judgment for the full $250,000 was entered without any deduction for contributory negligence.

On this appeal the Railroad has taken the position that the Boiler Inspection Act does not apply at all. It has attacked the finding of negligence under the Federal Employers' Liability Act and has alleged error in permitting the jury to infer negligence under the res ipsa loquitur doctrine. It also presses certain exceptions taken to portions of the charge which related to the jury's treatment of some of the evidence in the case and the inferences to be drawn therefrom.

While these particular exceptions could relate to the issues both under the Boiler

372

Inspection Act and the Federal Employers' Liability Act, we are of the opinion that they have no merit and call for no further discussion. Nor is it necessary to give consideration to the points on appeal which concern the Federal Employers' Liability Act or the issues of negligence and contributory negligence, included therein, because we have concluded that this case comes within the provisions of the Boiler Inspection Act and that the verdict and judgment in plaintiff-appellee's favor, based upon that Act, should be affirmed.

■ The appellant does not question that the liability imposed by the Boiler Inspection Act is absolute and is not dependent upon a finding of negligence on the part of the Railroad. Urie v. Thompson, 337 U.S. 163, 188, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949); Lilly v. Grand Trunk Western R. R. Co., 317 U.S. 481, 485, 63 S.Ct. 347, 87 L.Ed. 411 (1943). Although the appellant only obliquely raises a question about the sufficiency of the evidence to prove that, for the purposes of the Act, car #4207 was a locomotive and that the fuse, the fuse box, its contents, cover, latch and other attachments were parts and appurtenances of the locomotive, one or more of which were in improper condition and unsafe to operate "in the service to which the same were put," and that the plaintiff's injuries were proximately caused by such defects, we are satisfied that, making due allowance for the jury's right to draw reasonable inferences, there was a sufficient evidentiary basis for its verdict. Basham v. Pennsylvania R. R. Co., 372 U.S. 699, 700–701, 83 S.Ct. 965, 10 L.Ed. 2d 80 (1963); Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916 (1946).

■ The question relating to the application of the Boiler Inspection Act which the appellant stresses on this appeal is whether or not car #4207 was "in use" at the time of the accident. Appellant insists that it was not. As mentioned above, this factual issue was decided by the court. Its determination that the car was "in use" is clearly sup-

ported by the evidence in the record. The car was only temporarily taken off the mainline for a between-run inspection. It was not removed to a repair or storage track, but was placed on a train-assembly track adjacent to the mainline and left standing on a live track, with its lights on, its switchboard operating, and its motor generator and pumps working. Moreover, there is evidence from which the trial judge could properly have concluded that the mail had not yet been unloaded from the car at the time of the accident; that is, there was evidence that the mail was not to be unloaded at the mail dock until some time after the arrival of another mail and baggage car from the Babylon station at approximately 7:44 p. m. that evening. This case closely parallels and is governed by Brady v. Terminal R. R. Assn., 303 U.S. 10, 58 S.Ct. 426, 82 L.Ed. 614 (1938). What was said of the car in that case, at page 13, 58 S.Ct. at page 428 can be said of car #4207:

"* * * [It] had been brought into the yard * * * and placed on a receiving track temporarily pending the continuance of transportation. If not found to be defective, it would proceed to destination; if found defective, it would be subject to removal for repairs. It is not a case where a defective car has reached a place of repair. See Baltimore & Ohio R. Co. v. Hooven, 6 Cir., 297 F. 919, 921, 923; New York, C. & St. L. R. Co. v. Kelly, 7 Cir., 70 F.2d 548, 551. The car in this instance had not been withdrawn from use. Johnson v. Southern Pacific Co., 196 U.S. 1, 21, 22 [25 S.Ct. 158, 49 L.Ed. 363]; Delk v. St. Louis & San Francisco R. Co., 220 U.S. 580, 584–586 [31 S.Ct. 617, 55 L.Ed. 590]; Great Northern Railway Co. v. Otos, 239 U.S. 349, 351 [36 S.Ct. 124, 60 L.Ed. 322]; Chicago Great Western R. Co. v. Schendel [267 U.S. 287, 45 S.Ct. 303, 69 L.Ed. 614], supra. The car was still in use, though motionless. Minneapolis, St. Paul & Sault Ste. Marie Rwy. Co. v. Goneau, 269 U.S. 406 [46 S.Ct. 129, 70 L.Ed. 335]."

■■ Although the *Brady* case arose under the Federal Safety Appliance Act, that Act and the Boiler Inspection Act "are substantively if not in form amendments to the Federal Employers' Liability Act. They dispense, for the purposes of employees' suits, with the necessity of proving that violations of the safety statutes constitute negligence \* \* \*." Urie v. Thompson, supra, 337 U.S. at 189, 69 S.Ct. at 1034. In view of this identity of purpose and the similarity and overlapping of subject matter in dealing with railroad equipment and appliances, the cases defining and construing the phrase "in use," for the purpose of the Federal Safety Appliance Act, are authoritative for the same purpose under the Boiler Inspection Act. See Lyle v. Atchison, T. & S. F. Ry. Co., 177 F.2d 221 (7 Cir. 1949), in which the court found the locomotive was in the process of being serviced and was therefore not in use, but relied on cases under the Federal Safety Appliance Act in construing and applying the phrase.

■ Appellant also argues that Congress could not have intended the Boiler Inspection Act, with its absolute liability, to apply to one in Holfester's position, who, as an inspector, was actually engaged in searching out defects in order that the Railroad could comply with the Act. This question was also raised in Brady v. Terminal R. R. Assn., supra, and was disposed of at page 16 of 303 U.S., page 429 of 58 S.Ct. as follows:

> "We think that these considerations require the conclusion that one is not to be denied the benefit of the act because his work was that of inspection for the purpose of discovering defects. As we said in Louisville & Nashville R. Co. v. Layton, [243 U.S. 617, 37 S.Ct. 456, 61 L.Ed. 931], supra, the liability 'springs from its being made unlawful to use cars not equipped as required,—not from the position the employee may be in, or the work which he may be doing at the moment when he is injured,' provided the defective equipment is the proximate cause of the injury.

> "The fact that petitioner was looking for defects of the sort which caused his injury does not prevent recovery as the statute expressly excludes the defense of assumption of risk. \* \* \*"

These considerations are equally applicable to the Boiler Inspection Act, and Holfester is not, for the reason advanced, barred from seeking relief under its provisions.

■ Appellant claims that the damages of $250,000 are excessive; however, in view of the extreme seriousness of the injuries, the extensive pain and suffering, and the permanency of the disability, we are not of the opinion that the verdict and judgment should be disturbed.

The judgment of the District Court is affirmed.