John A. STEER, Appellant,

v.

BURLINGTON NORTHERN,
INC., Appellee.

John A. STEER, Appellee,

v.

BURLINGTON NORTHERN,
INC., Appellant.

Nos. 83–1473, 83–1510.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1983.

Decided Nov. 8, 1983.

As Amended Dec. 5, 1983.

Herbert J. Friedman, Friedman Law Offices, Lincoln, Neb., for Steer.

Rodney M. Confer of Knudsen, Berkheimer, Richardson & Endacott, Lincoln, Neb., for Burlington Northern.

Before LAY, Chief Judge, HEANEY and ARNOLD, Circuit Judges.

LAY, Chief Judge.

John Steer brought this action against Burlington Northern claiming damages for injuries received while employed by the de-

fendant. In his first count, Steer charged Burlington Northern with negligence under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq. (1976). Count two charged the defendant with negligence in assigning Steer, after he returned to work, to duties which aggravated his injuries. In count three, Steer alleged a violation of the Boiler Inspection Act, 45 U.S.C. § 23 (1976).

The jury returned a verdict in favor of Steer on the first count and awarded him $25,543.23.[1] The jury found for the defendant on the second count. The trial court directed a verdict for defendant on the count brought under the Boiler Inspection Act. Steer appeals from the court's granting of the directed verdict on the third count.

*Facts*

Steer was employed by the Burlington Northern Railroad Company as a pipefitter. On April 23, 1981, he was working at the freight pit servicing locomotives. During this shift, Steer and his crew were told to disengage a locomotive from a train, reassemble the train, and send it back to the coal fields. After the crew removed the unit, Steer went about his duties hooking up the air lines to the air brakes, checking the gaskets, and turning on the air.

When Steer had finished, the head mechanic informed him that an air leak existed along one of the lines. Steer returned to the unit and ran his hands along the lines to find the leak. At the moment Steer found the leak, the main reservoir line hose blew out of the gasket striking and injuring Steer's hand and wrist.

*Discussion*

The Boiler Inspection Act provides:

It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of sections 22 to 29 and 31 to 34 of this title and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for.

45 U.S.C. § 23 (1976). The district court found that the locomotive on which Steer was working at the time of his injury was not "in use" for the purposes of the Boiler Inspection Act.

The evidence supports this conclusion. The locomotive had been taken to the "Asparagus Patch," a place for removal of locomotives and their repair. Steer testified that he was in the process of repairing the locomotive when he was injured and that the unit could not have moved until those repairs had been made.[2]

Locomotives being serviced in a place of repair are not "in use" within the meaning of the Boiler Inspection Act. *See Brady v. Terminal Railroad Association,* 303 U.S. 10, 13, 58 S.Ct. 426, 428, 82 L.Ed. 614 (1938).[3] As the Fourth Circuit has stated: "Congressional intent and the case law con-

1. This figure represents the amount that the jury found would reasonably compensate Steer for his injury lessened proportionally by the amount of negligence attributable to Steer.

2. We note that this is not a case in which the unit was being rejoined to the rest of the train on the main tracks, *cf. Minneapolis, St. P. & S. Ste. M. Ry. Co. v. Goneau,* 269 U.S. 406, 410, 46 S.Ct. 129, 131, 70 L.Ed. 335 (1925) (plaintiff attempted to recouple cars while train stopped on bridge), or in which the defective unit was in the process of being disengaged for removal to a repair area, *cf. Chicago Great Western*

*R.R. Co. v. Schendel,* 267 U.S. 287, 289, 45 S.Ct. 303, 304, 69 L.Ed. 614 (1925) (injury occurred during attempt to detach damaged car and leave on siding).

3. Although *Brady* construed the Federal Safety Appliance Act, 45 U.S.C. § 11 (1976), its reasoning is applicable to a construction of the Boiler Inspection Act. *See Holfester v. Long Island R.R. Co.,* 360 F.2d 369, 373 (2nd Cir. 1966); *cf. Lyle v. Atchison, T. & S.F. Ry. Co.,* 177 F.2d 221 (7th Cir.1949).

struing the statute clearly exclude those injuries directly resulting from the inspection, repair, or servicing of railroad equipment located at a maintenance facility." *Angell v. Chesapeake and Ohio Railway Co.,* 618 F.2d 260, 262 (4th Cir.1980) (footnote omitted).

We hold that the district court was not in error in concluding that the locomotive was not "in use" at the time Steer was injured.[4]

In its cross-appeal, Burlington Northern argues that the evidence presented at the trial was insufficient to support the jury's finding of negligence. Viewing the "evidence and all reasonable inferences therefrom in the light most favorable to the jury verdict," *United States v. Jackson,* 714 F.2d 809, 812 (8th Cir.1983), we find that there was substantial evidence to support the verdict.

The judgment of the district court is affirmed.

---

**4.** This was a question of law for the trial court to decide, not a question of fact for the jury as the plaintiff contends. *See United States v. Thompson,* 252 F.2d 6, 9 (8th Cir.1958).

Burlington Northern asserts as an additional ground for contesting Steer's appeal, Steer's acceptance of the benefits of the judgment on count one. When he accepted payment from the defendant, Steer executed a general release in favor of Burlington Northern of all claims. Steer asserts that his intent was to release Burlington Northern only from count one. In view of our holding on the Boiler Inspection Act, we need not reach this additional issue.