Charles H. LAKIN, Appellant,

v.

CONSOLIDATED RAIL CORPORATION, Appellee.

No. 41A04–8804–CV–124.

Court of Appeals of Indiana, Fourth District.

Nov. 1, 1989.
Rehearing Denied Dec. 12, 1989.

John L. Hess, Petit, Hess Atherly & Petit, Carmel, for appellant.

Keith A. Gaston, Cynthia L. Wodock, White & Raub, Indianapolis, for appellee.

MILLER, Judge.

Plaintiff-appellant Charles H. Lakin, a locomotive engineer, brought an action in state court against his employer defendant-appellee Consolidated Rail Corporation (Conrail) to recover for injuries he allegedly suffered while making an emergency exit from a locomotive which had collided with a truck at a railroad crossing in Marion County, Indiana. Lakin claimed that while exiting, he tripped over a cable lying across the floor of the locomotive and was injured. Lakin filed suit under the Federal Employer's Liability Act, 45 U.S.C. §§ 51–60 (FELA), alleging Conrail was negligent. Lakin also filed suit under the Boiler Inspection Act, 45 U.S.C. §§ 22–34(BIA) alleging Conrail had violated this Act and was therefore, strictly liable for his injuries.[1] A jury trial was held in October, 1987. At the close of all the evidence, the trial court granted Conrail's motion for a directed verdict—withdrawing Lakin's claim under the BIA from the jury's consideration. The case was submitted to the jury on Lakin's claim of negligence under the FELA and the jury returned a verdict in favor of Conrail. Lakin does not raise any question about his FELA claim on appeal. His sole claim of error is:

> The trial court erred in withdrawing Lakin's claim under the BIA from the jury's consideration.

## FACTS

On August 14, 1980 Lakin was employed by Conrail as a locomotive engineer and was assigned to a United States Department of Transportation (DOT) test train,

---

1. The FELA and BIA are federal safety laws pertaining to railroads. As such, they are *in pari materia* and must be liberally construed to carry out their remedial and humanitarian purposes. *Southern Ry Co. v. Bryan* (1967 5th Cir.), 375 F.2d 155, 158, *cert. denied,* 389 U.S. 827, 88 S.Ct. 82, 19 L.Ed.2d 83. As noted in *King v. Southern Pacific Transp. Co.* (1988 10th Cir.) 855 F.2d 1485, 1488, n. 1, these statutes further their humanitarian purposes by imposing different types of liability. Liability under the FELA is premised on the railroad's negligence. 45 U.S.C. § 51; *Rogers v. Missouri Pac. RR.* (1957), 352 U.S. 500, 508–09, 77 S.Ct. 443, 449–50, 1 L.Ed.2d 493. However, negligence is not a basis of liability under the BIA. This Act imposes an absolute and continuing duty upon the railroad to maintain the locomotive, and all its parts and appurtenances, in proper condition, and safe to operate without unnecessary peril to life or limb. *Lilly v. Grand Trunk W.R. Co.* (1943), 317 U.S. 481, 485, 63 S.Ct. 347, 350, 87 L.Ed. 411. The BIA imposes "absolute liability if it be shown that the locomotive was not in proper condition and safe to operate." *Guegan v. N.Y. Central* (1957 2nd Cir.), 243 F.2d 524, 526. While the FELA allows recovery in a broad range of situations, liability under the BIA occurs only under narrow circumstances. As a result, claims which can not be maintained under the BIA are often actionable under the FELA. *King, supra.*

scheduled to conduct track geometry tests on Conrail's Indianapolis-to-Marion, Indiana line.[2] The test train consisted of one Conrail locomotive and two coach cars, owned by DOT, and contained testing equipment operated by employees of ENSCO, Inc., a private contracting firm hired by DOT to conduct the tests. Riding in the locomotive with Lakin was another Conrail employee, Ed Worley, and Tim Caldwell, an ENSCO employee. Caldwell was operating a control panel used to gather track geometry data. The control panel and a cable—which connected the control panel with the data collecting equipment located in the coach cars trailing the locomotive—were installed in the test train by ENSCO personnel specifically for DOT tests. The cable ran from the rear coach cars, along the outside of the train, and into the locomotive, through the left side window, where it was wrapped once around the post of a chair and attached to the control panel.

As the train traveled in a northeasterly direction out of Indianapolis, it collided with a truck at a railroad crossing. Upon impact, the fuel tank of the truck exploded and, as soon as the locomotive stopped, all three men exited to avoid the ensuing fire. Lakin claims that while exiting, he tripped over the cable and fell to the floor—injuring his back.[3] Lakin filed suit against Conrail[4] on August 10, 1982 under the FELA 45 U.S.C. § 51[5] alleging Conrail was negligent. Lakin also alleged Conrail had violated the BIA, 45 U.S.C. § 23,[6] and therefore, was strictly liable for his injuries. To support his claim under the BIA, Lakin alleged Conrail violated a regulation promulgated under the BIA, found at 49 C.F.R. § 229.119(C), which provides:

> Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard. Floors shall be properly treated to provide secure footing.

Lakin asserted the placement of the cable—across the floor of the locomotive—violated the regulation, quoted above, by creating a tripping hazard. At the close of Lakin's case, Conrail moved for a judgment on the evidence (directed verdict) pursuant to Indiana Rules of Procedure, Trial Rule 50. The trial court denied this motion as to the negligence claim under the FELA, but

**2.** *See* 45 U.S.C. § 437(a), which provides "the Secretary [of Transportation] is authorized to perform such acts including, but not limited to ... carrying out and contracting for research development, testing, evaluation ... and delegating to any public bodies or qualified persons, functions respecting examination, inspection and testing of railroad facilities...."

**3.** We note that Lakin's claim that he tripped and fell while exiting the locomotive was disputed by other evidence. Caldwell testified that after the collision he saw Lakin get out of his seat and exit the locomotive. Caldwell testified that he did not see Lakin fall at any time after impact.

**4.** He also filed suit against the owner of the truck; however, after a settlement was reached, the owner was dismissed from the lawsuit.

**5.** Section 51 reads: "Every common carrier by railroad while engaging in commerce between any of the Several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

**6.** Section 23 reads: "It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of sections 22 to 29 and 31 to 34 of this title and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for."

granted the motion as to the BIA claim, finding there was insufficient evidence to show a violation of the Act. Lakin moved the court to reconsider its ruling on the BIA claim and requested the court to reserve judgment until the close of all the evidence. The trial court granted this request. At the close of all the evidence, the trial court found the BIA inapplicable and withdrew this issue from the jury. In explaining its ruling the trial court stated:

> The Court in relation to the applicability of *45 U.S.C. § 23* finds that ... referring to *Southern Railroad Co. v. Lunsford* (1936), 80 L.Ed. 740, 297 U.S. 398 [56 S.Ct. 504]; wherein the Supreme Court said, Congress in passing this section did not intend 'that every gadget placed upon a locomotive by a carrier, for experimental purposes, should become part thereof within the rule of absolute liability.' The Court finds that the cable and the grips are in no way under what was intended to produce absolute liability under *45 U.S.C. § 23*
> (R. 696–697)

In substance, the court ruled the cable was not a part or appurtenance of the locomotive within the meaning of the BIA.

## DECISION

█ Lakin claims the trial court's ruling is erroneous and the court's reliance on *Lunsford* is misplaced. He claims the BIA is applicable and the court erred in withdrawing his claim under the BIA from the jury's consideration. We agree.

The BIA provides:

> It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of sections 22 to 29 and 31 to 34 of this title and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for.

This Act imposes upon the railroad an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition and safe to operate without unnecessary peril to life or limb. *Lunsford, supra; Lilly v. Grand Trunk W.R. Co.* (1943), 317 U.S. 481, 485, 63 S.Ct. 347, 350, 87 L.Ed. 411. The Act is to be liberally construed in light of its prime purpose, the protection of employees by requiring the use of safe equipment. *Id.* The Secretary of Transportation is authorized under the BIA to set the standards of compliance by promulgating rules and regulations.[7] *Id.; Urie v. Thompson* (1949), 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282. Once promulgated, these rules acquire the force of law and become an integral part of the Act. *Lilly, supra.* Violations of the rules are violations of the statute. *Urie, supra.* Any employee, engaged in interstate commerce, who is injured by reason of a violation of the BIA, has a cause of action under the Act.[8] Negligence is not a basis for liability under the Act. Rather, the liability imposed is absolute upon proof of an unsafe part and proximate cause. *Urie, supra; Lunsford, supra.* A plaintiff need not establish the defect was the sole cause of the injury, proximate cause is sufficient. *Green v.*

---

7. The BIA, as amended by an Act of March 15, 1915, Ch. 169, 38 Stat. 1192, granted the Interstate Commerce Commission the power to regulate "all parts and appurtenances" of locomotives. However, that power was transferred to the Secretary of Transportation in 1966 by the Department of Transportation Act, 49 U.S.C. §§ 1651–1659 at 1655(e)(1)(E)(1976). The regulations are the federal locomotive safety standards, 49 C.F.R. § 229.1 (1980) *et seq.,* issued under the BIA.

8. We note the BIA, by its own terms, does not confer any right of action upon injured employees. It merely makes a violation of its prohibitions "unlawful". 45 U.S.C. § 23. *Urie, supra,* at 188, 69 S.Ct. at 1033. However, the Supreme Court has consistently held the BIA supplements the FELA, and an employee injured as a result of BIA violations may file suit under the FELA. *Id.; Lilly, supra; Green v. River Terminal Ry Co.* (1985 6th Cir.), 763 F.2d 805, 810.

*River Terminal Ry Co.* (1985 6th Cir.), 763 F.2d at 805, 810.

In determining whether the BIA was applicable in the present case, the trial court relied on *Lunsford, supra.* In *Lunsford,* the Supreme Court considered whether an experimental device—placed upon a locomotive for the purpose of avoiding derailments—was a part or appurtenance of the locomotive within the meaning of the BIA. In holding the experimental device was not a part or appurtenance, the court stated:

> With reason, it can not be said that Congress intended that every gadget placed upon a locomotive for experimental purposes, should become part thereof within the rule of absolute liability. So to hold, would hinder commendable efforts to better conditions and tend to defeat the evident purpose—avoidance of unnecessary peril to life or limb. Whatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the [Secretary] are within the statute. But mere experimental devices which do not increase the peril, but may prove helpful in an emergency are not. *Id.* at 402, 56 S.Ct. at 506.

Apparently the trial court in this case—relying on the language quoted above—reasoned the cable was a temporary fixture, used only to gather experimental data and therefore, was not a "part or appurtenance" of the locomotive within the meaning of the BIA.

However, the court's reliance on *Lunsford* is misplaced. In *Lunsford* the plaintiff was not claiming the railroad had violated any rule promulgated under the BIA. Rather, the plaintiff claimed once the experimental device was placed upon the locomotive it became a "part or appurtenance" which the railroad was absolutely bound to maintain. When the device malfunctioned and he was injured thereby, the plaintiff claimed the railroad had violated the BIA by failing to properly maintain the device. In rejecting the plaintiff's claim, the court specifically noted that the Secretary had not promulgated a rule mentioning the devices, and they were not subject to inspection. *Lunsford, supra.*

However, in the case before us, the Secretary has promulgated a specific rule requiring the floors of locomotives to be free from "any obstruction that creates a slipping, tripping or fire hazard". 49 C.F.R. § 229.119(c). As noted, once promulgated, these rules acquire the force of law and become an integral part of the Act. *Lilly, supra.* Moreover, violations of these rules are violations of the statute. *Urie, supra.* Here, Lakin claims the placement of the cable—across the floor of the locomotive—violated this rule and, consequently, the Act by creating a tripping hazard. Unlike the plaintiff in *Lunsford,* Lakin is claiming Conrail violated a specific rule promulgated under the BIA. In its ruling, the trial court focused upon the fact that the cable was not a "part or appurtenance" of the locomotive. However, regardless of whether the cable was a "part or appurtenance", the floor of the locomotive is an "essential part of the completed locomotive" which is subject to specific regulation and inspection. *Lunsford, supra* at 402, 56 S.Ct. at 506. Under these circumstances, we find the BIA applicable to this case.[9]

Additionally, we note there was conflicting evidence at trial as to whether the placement of the cable created a tripping hazard in violation of the Act. Lakin testified the cable was strewn about the floor of the locomotive creating a tripping hazard. However, Caldwell, an ENSCO employee, denied there was any excess cable on the floor over which Lakin could have tripped. Caldwell testified the cable ran from the rear coach cars along the outside of the train, and into the locomotive,

9. In reaching this conclusion we do not wish to imply that an employee must allege a "regulation violation" to maintain a suit under the BIA. To the contrary, a locomotive may satisfy federal regulations and still be "unsafe" under the BIA. *See, King, supra,* n. 3 and *Herold v. Burlington Northern, Inc.* (1985 8th Cir.) 761 F.2d 1241, 1246, n. 2. There is liability under the Act if any condition of the locomotive makes it unsafe to operate and involves "unnecessary peril to life or limb". *Lilly, supra; Calabritto v. New York, New Haven and Hartford Railroad* (1961 2nd Cir.), 287 F.2d 394, *cert. denied,* 336 U.S. 928, 81 S.Ct. 1649, 6 L.Ed.2d 387.

through the left side window, where it was wrapped once around the post of Caldwell's chair and attached to the control panel. Caldwell testified this setup took into account safety considerations and was arranged so it would not cause obstructions to anyone.

A trial court may properly grant a defendant's motion for judgment on the evidence "only when there is no evidence on one or more of the critical elements of the plaintiff's cause of action or the evidence with respect thereto is without conflict and leads only to inferences in favor of the defendant." *Nehi Beverage Company v. Petri* (1989), Ind.App., 537 N.E.2d 78, 84, quoting *Kroger Company Sav–On Store v. Presnell* (1987), Ind.App., 515 N.E.2d 538, 543. If there is evidence allowing reasonable people to differ as to the result, then judgment on the evidence is improper. *Id.* Here, the evidence was conflicting. Thus, the trial court erred in granting Conrail's motion for judgment on the evidence as to the BIA claim. Clearly, it was a question for the jury as to whether the BIA was violated and whether the violation was the proximate cause of Lakin's injury.

Conrail claims that even if the trial court erred in withdrawing Lakin's claim under the BIA from the jury, this error was rendered harmless when the court gave the jury the following instruction:

There were in force regulations promulgated by the United States Department of Transportation commonly known as Railroad Locomotive Safety Standards and Locomotive Inspection, there was a regulation in force which provided in part:

"Floors of cabs, passageways and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping, or fire hazard. Floors shall be properly treated to provide secure footing."

If you find from a preponderance of the evidence that the defendant, Consolidated Rail Corporation, violated this regulation on the occasion in question and the plaintiff's injury resulted in whole or in part from such violation, such violation would constitute negligence on the part of the defendant, Consolidated Rail Corporation.

To recover under the FELA a plaintiff must prove negligence—that is, the plaintiff must prove the railroad failed to exercise reasonable care. However, liability under the BIA is not based upon the railroad's negligence. The Act imposes absolute liability if a plaintiff proves a violation and, the railroad is *not* excused by any showing of care, however assiduous. *Brady v. Terminal Ry. Ass'n* (1938), 303 U.S. 10, 15, 58 S.Ct. 426, 429, 82 L.Ed. 614. Thus, the plaintiff's burden of proof is different under each statute. However, Conrail claims the instruction quoted above required the jury to find Conrail negligent if it found the BIA regulation, 49 C.F.R. § 229.119(c), was violated. Thus, Conrail claims there was no "different or more difficult" burden of proof under the FELA and Lakin was not prejudiced by the court's decision to withdraw his claim under the BIA from the jury. (Conrail's brief, p. 14).

Lakin disagrees with Conrail's reasoning noting, under the FELA, an employer may assert the partial defense of contributory negligence to reduce the plaintiff's recovery, whereas, contributory negligence is not a defense under the BIA. *Lilly, supra; Urie, supra; Gowins v. Pennsylvania Railroad Company* (1962 6th Cir.), 299 F.2d 431, 433. Had his claim under the BIA proceeded to the jury, Lakin claims the jury would have been instructed they could *not* consider contributory negligence as a defense. Here, the record reveals the jury was instructed on the defense of contributory negligence. As such, Lakin claims the instruction, quoted above, did not render the trial court's action—in withdrawing Lakin's claim under the BIA from the jury—harmless. In response, Conrail asserts "the jury found no contributory negligence so this issue is also academic and harmless." (Conrail's brief, p. 13).

Here, the jury received three possible verdict forms: (1) a finding for Conrail, (2) a finding for Lakin and against Conrail with damages to Lakin, and (3) a finding

for Lakin and against Conrail with the damages reduced by Lakin's own contributory negligence. The jury returned a verdict in favor of Conrail. From this verdict, Conrail concludes the jury did not find contributory negligence and therefore, had Lakin's claim under the BIA proceeded, the jury's verdict would have been the same. Thus, Conrail asserts the trial court's action in withdrawing Lakin's claim under the BIA from the jury was harmless error.

While Conrail's claim has some merit, we cannot hold—in light of *all* the instructions given—that the instruction quoted above cured any prejudicial error to Lakin. In this case, the record reveals the jury was given thirty-one (31) final instructions. In addition to the instruction quoted above, the jury was instructed that under the FELA, a railroad is liable only if the railroad is negligent. The jury was further instructed that the plaintiff had the burden of proving the railroad was negligent and, that negligence is the failure to use reasonable care. In another instruction the jury was informed the FELA imposes upon the railroad a duty to use *reasonable care* to furnish its employees with a safe place to work and that a railroad is not liable for any and all injuries that may occur where its employees are working; rather, a railroad's duty is to *exercise ordinary care* under the facts and circumstances existing at the time of the occurrence to see that the place in which the work is to be performed is *reasonably safe*. Finally the jury was instructed that the law of the case was *not* embodied in any one instruction, and they should consider the instructions as a whole in reaching their decision.

Here, the instructions were contradictory in nature. On the one hand, the jury was instructed to find Conrail negligent if they found Conrail violated the BIA regulation providing that floors of locomotives shall be kept free from "any obstruction that creates a slipping, tripping, or fire hazard". 49 C.F.R. § 229.119(c). On the other hand, they were instructed not to find Conrail negligent if they found Conrail exercised reasonable care—under the facts and circumstances existing at the time of the oc-

currence—to furnish its employees with a reasonably safe place to work. The trial court may not, by contradictory instructions, leave the jury with the task of determining which of the two instructions to follow or what rule of law to apply. *Harper v. James* (1965), 246 Ind. 131, 203 N.E.2d 531, 534; *Hainey v. Zink* (1979), 182 Ind.App. 192, 394 N.E.2d 238, 242.

Finally, in contrast to the instructions given, we note the BIA imposes an absolute and continuing duty upon the railroad to maintain its locomotive, and all parts and appurtenances thereof, in proper condition and safe to operate without unnecessary peril to life and limb, *Lilly, supra,* and, the railroad is not excused by any showing of care, however diligent. *Brady, supra.* Thus, had Lakin's claim under the BIA proceeded and had the jury been properly instructed under the BIA, the jury may not have returned the same verdict. In light of *all* the instructions given, we cannot hold that the one instruction, quoted above, cured any prejudicial error to Lakin.

■ Next, Conrail asserts any error in withdrawing Lakin's claim under the BIA is irrelevant because of the overwhelming evidence of an intervening and superseding cause. In its brief, Conrail argues the truck driver's negligence in failing to stop at the railroad crossing superseded and excused any negligence on the part of Conrail in allegedly placing the cable in a dangerous position in the locomotive. Thus, Conrail claims that, even if the jury was allowed to consider Lakin's claim under the BIA, the jury could *not* find Conrail's actions proximately caused Lakin's injury. Essentially, Conrail is asking this court to hold, as a matter of law, that Conrail's actions were not the proximate cause of Lakin's injury.

However, the determination of proximate cause is generally a question of fact for the jury. *FMC Corp. v. Brown* (1988), Ind. App., 526 N.E.2d 719. "Proximate cause becomes a question of law only when the facts are not in conflict and only one inference can be drawn therefrom." *Id.* at 727. Under the facts of this case, we cannot say, as a matter of law, Conrail's placement of

the cable was not the proximate cause of Lakin's injury.

Finally, Conrail argues the trial court properly withdrew Lakin's claim under the BIA from the jury's consideration as the train was not "in use" on Conrail's line within the meaning of the Act.

■ In order for the BIA to apply, a locomotive must be "in use" at the time of the injury. *Angell v. Chesapeake & O. Ry. Co.* (1980 4th Cir.), 618 F.2d 260. The BIA provides in part: "It shall be unlawful for any carrier to use or permit to be *used on its line . . .*" 45 U.S.C. § 23 (emphasis added). The phrase "used on its line" has been interpreted to mean used in moving interstate or foreign traffic. *Estes v. Southern Pac. Transp. Co.* (1979 10th Cir.), 598 F.2d 1195, 1198. As such, employees, injured while performing services or repair functions on locomotives, are routinely denied coverage under the Act because the locomotives are not "in use". In *Estes,* an employee was injured while opening an engine cab door in preparation for moving the engine from a maintenance area to an unknown location. The court held that at the time of the accident the engine "was not engaged in moving interstate or foreign traffic and was not, therefore, in use on [the railway's] line for purposes of the Boiler Inspection Act". *Id.* at 1198–99. *See also, Steer v. Burlington Northern, Inc.* (1983 8th Cir.), 720 F.2d 975, 976. (employee injured while repairing locomotive that had been removed to a maintenance area); *Tisneros v. Chicago & Northwestern Ry. Co.* (1952 7th Cir.), 197 F.2d 466, *cert. denied,* 344 U.S. 885, 73 S.Ct. 184, 97 L.Ed. 685. (employee injured on locomotive where locomotive had ended its service run and was in a stall in the roundhouse).

■ Conrail relies on the cases cited above and reasons that the Conrail locomotive was not "in use" because it was not moving interstate or foreign commerce. Rather, the locomotive was being used to assist DOT in track inspection. Under these circumstances, Conrail claims the BIA is inapplicable. We disagree. It is clear from case law that locomotives are not "in use" under the BIA only when they have been removed from normal operating tracks for the purpose of inspection, repair or servicing. *Angell, supra.*

In *Angell* an employee was injured while assisting other employees in switching engines at a railway facility. The railroad argued that since the engine was not actually engaged in moving interstate or foreign commerce at the time of the accident, it was not "in use" on the railway's line for purposes of the Act. However, the court rejected the railroad's argument noting the BIA only excludes "injuries directly resulting from the inspection, repair, or servicing of railroad equipment located at a maintenance facility". *Id.* at 262. Since the injury in *Angell* occurred *after* all servicing, maintenance and inspection work had been performed and the engine was being removed from a maintenance area to a nearby track to pull a train, the court held the locomotive was "in use" within the meaning of the Act.

In the case before us, we find the Conrail locomotive was clearly "in use" within the meaning of the Act. This locomotive had not been removed from the track and was not being repaired at the time of the injury. Rather, the locomotive was in use on Conrail's line for the purpose of conducting DOT inspection tests. Additionally, we note the trial court found as a matter of law Conrail was engaged in interstate commerce and the jury was so instructed.

For the foregoing reasons, we find the trial court erred in granting Conrail's motion for judgment on the evidence and withdrawing Lakin's claim under the BIA from the jury's consideration. Accordingly, we reverse and remand this cause for a new trial to allow Lakin to present his claim under the BIA.

BUCHANAN, J., concurs.

CHEZEM, P.J., concurs in result.