Carolyn CROCKETT, Plaintiff–Appellant,

v.

The LONG ISLAND RAILROAD, Defendant–Appellee.

No. 1738, Docket 95–7025.

United States Court of Appeals, Second Circuit.

Argued June 22, 1995.

Decided Sept. 11, 1995.

Philip P. Vogt, Joseph P. Altier & Associates, New York City, for plaintiff-appellant.

William J. Blumenschein, Jamaica, NY (Roberta Bender, Jamaica, NY, on the brief), for defendant-appellee.

Before: KEARSE, ALTIMARI, and PARKER, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiff-appellant Carolyn Crockett ("Crockett") appeals from a judgment of the United States District Court for the Eastern District of New York (Wexler, *J.*), following a jury verdict, awarding her approximately $25,000 in connection with injuries she sustained while working on a locomotive owned and operated by her employer defendant-appellee Long Island Railroad ("LIRR"). The district court charged the jury under the Federal Employers' Liability Act ("FELA"), but declined Crockett's request to instruct the jury to consider liability under the Boiler Inspection Act ("BIA"). The jury, which found Crockett eighty-seven percent comparatively negligent for her injuries, awarded Crockett lost wages, past medical expenses, past pain and suffering, and future medical expenses, but declined to award her any damages for future pain and suffering.

On appeal, Crockett challenges the district court's refusal to charge the jury under the BIA, as well as the jury's failure to award any amount for future pain and suffering. We conclude that although the district court correctly declined to charge the jury under the BIA, the jury's award of future medical expenses but no damages for future pain and suffering is irreconcilably inconsistent. Accordingly, we affirm the judgment of the district court as to liability, but vacate and remand for a new trial on the issue of damages.

## BACKGROUND

Crockett sustained a serious knee injury early in the morning of Saturday, October 26, 1991 at the Hempstead, Long Island train station, when she slipped and fell from a locomotive owned and operated by LIRR. Crockett, an LIRR car appearance maintainer, fell while attempting to clean the motorman's front windshield with a paper towel. To reach the windshield, Crockett had opened the front door to the car and placed her left foot outside the car on a "smooth metal threshold plate" that was sloped slightly downward, while keeping the right side of her body inside the car. According to Crockett, this was the method by which LIRR

employees typically performed this task. She testified at trial that the threshold plate was wet at the time due to weather conditions. As she stretched to clean the windshield, her left foot slipped and she fell, twisting her right knee inside the car.

The LIRR accident report stated that the accident occurred on Track 2 between 6:00 and 6:30 AM, although Crockett testified that it occurred at 5:30 AM on Track 3. The Hempstead station consisted of four "station tracks" (Tracks 5—8) and four "yard tracks" (Tracks 1—4). Crockett testified that LIRR kept "local trains" in the yard overnight, and that those were the last trains she would clean. An LIRR foreman indicated that the yard was used to store trains that were not in service or that were "crippled" or defective in some manner. LIRR records suggest that the locomotive on which Crockett was working arrived at Hempstead on Friday evening at 11:28 on Track 7, was moved to Track 2 overnight, and left from Track 7 at 7:21 Saturday morning.

Crockett was examined by Dr. Ben Benatar, an orthopedic surgeon, who diagnosed her as suffering from torn lateral cartilage and meniscus, a fragmented cruciate ligament, and minor degenerative or minor arthritic changes. Over the next two and one-half years, Benatar performed several arthroscopic procedures on Crockett in an effort to stabilize her damaged knee, including one major reconstructive procedure. Crockett also underwent extensive physical therapy over this time period. Ultimately, Crockett returned to work at a desk job at LIRR on July 21, 1994 and completed her therapy in October 1994. Crockett continues to wear a knee brace at all times. She also testified that she suffers from chronic pain in her knee and is unable to kneel, squat, or stand for long periods of time. Both parties recognized that Crockett's knee was damaged and will require some degree of future medical treatment. Moreover, Dr. Benatar testified that Crockett will have to wear a brace for the rest of her life and, if the pain gets worse, will require a total knee replacement, which would cost roughly $34,000.

Crockett commenced this action pursuant to the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, and the Boiler Inspection Act, 45 U.S.C. § 23 (repealed by Pub.L. 103–272, § 7(b), 108 Stat. 1379; transferred as amended to 49 U.S.C. § 20701 by Pub.L. 103–272, § 1(e), 108 Stat. 885). At the close of evidence, the district court refused Crockett's request to charge the jury under the BIA, and submitted only the FELA claim to the jury. By special interrogatories, the jury separately found as follows: (1) the locomotive was in an unsafe condition for working, (2) LIRR was thirteen percent negligent, and (3) Crockett was eighty-seven percent negligent. With respect to damages, the jury awarded (1) $87,248 for loss of past earnings, (2) $8695 for past medical expenses, (3) $70,-000 for past pain and suffering; (4) $33,000 for future medical expenses, and (5) no damages for future pain and suffering. This totaled roughly $200,000, of which Crockett received $25,862 because of her comparative negligence.

Crockett now appeals.

## DISCUSSION

### 1. Boiler Inspection Act

■ Crockett's first argument is that the district court erred in failing to instruct the jury that LIRR could be found liable under the Boiler Inspection Act. Under the BIA, Crockett would recover full damages without diminution for her comparative culpable conduct. *See, e.g., Holfester v. Long Island R.R.,* 360 F.2d 369, 371 (2d Cir.1966); *see also Topping v. CSX Transportation, Inc.,* 1 F.3d 260, 261 (4th Cir.1993) ("to recover under the [BIA], an injured railroad worker need only prove that a violation on the part of the railroad was a cause of his injury."). The applicable statute provides:

It shall be unlawful for any railroad to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such railroad without unnecessary peril to life or limb, and unless said locomotive [has been inspected in

accordance with applicable statutes and regulations].

45 U.S.C. § 23 (1988). Liability under the BIA "is absolute and is not dependent upon a finding of negligence on the part of the Railroad." *Holfester,* 360 F.2d at 372. An employee who is injured by a violation of the BIA may sue under FELA, as Crockett sought to do in this action. *See Lilly v. Grand Trunk W. R.R.,* 317 U.S. 481, 485, 63 S.Ct. 347, 350, 87 L.Ed. 411 (1943).

■ As a threshold matter, liability will only exist under the BIA where the locomotive in question is "in use" at the time of the accident. The question of whether a train is in use is a matter of law for the court, *see Pinkham v. Maine Cent. R.R.,* 874 F.2d 875, 881 (1st Cir.1989); *Steer v. Burlington N., Inc.,* 720 F.2d 975, 977 n. 4 (8th Cir.1983); *Garcia v. Union Pacific R.R.,* 835 F.Supp. 1360, 1362 (D.Kan.1993), although we defer to the factual findings underlying the court's conclusion, *see, e.g., Holfester,* 360 F.2d at 372. Even though the district court did not explicitly address the issue, it is clear from the record that the train was not in use.

Courts have recognized that a locomotive may be in use even though the locomotive is not in motion at the time of injury. *See Brady v. Terminal R.R. Ass'n of St. L.,* 303 U.S. 10, 13, 58 S.Ct. 426, 428, 82 L.Ed. 614 (1938) ("car was still in use, though motionless"); *Holfester,* 360 F.2d at 372 ("motionless" car can still be in use); *see also Raudenbush v. Baltimore & Ohio R.R.,* 160 F.2d 363, 368 (3d Cir.1947) (train in use where there is "an interval of but a few seconds or minutes" between active use of car and time of accident). At the same time, "[c]ongressional intent and the case law construing the statute clearly exclude those injuries directly resulting from the inspection, repair, or servicing of railroad equipment located at a maintenance facility." *Angell v. Chesapeake & Ohio Ry.,* 618 F.2d 260, 262 (4th Cir.1980).

This Court has explicitly construed the term "in use" under the BIA on only one occasion. In *Holfester,* we concluded that substantial evidence existed to support the district court's finding of use where a train was temporarily taken off the main line for a "between-run inspection." 360 F.2d at 372.

The fully-loaded mail car was inactive for less than three hours. We noted that the train "was not removed to a repair or storage track, but was placed ... on a live track, with its lights on, its switchboard operating, and its motor generator and pumps working." *Id.*

As stated above, we conclude that the train on which Crockett was injured was not in use, and thus the district court did not err in declining to charge the jury under the BIA. The train was inactive on a yard track for roughly eight hours awaiting cleaning, which is hardly the sort of temporary suspension or delay in service that would warrant a finding of use. *See, e.g., id.; cf. Brady,* 303 U.S. at 13, 58 S.Ct. at 428 (train was in use where it was "brought into the yard ... and placed on a receiving track temporarily pending the continuance of transportation"). Although the locomotive's lights were on, the train was not idling. *Cf. Rivera v. Union Pac. R.R.,* 868 F.Supp. 294, 300 (D.Colo.1994) (idling locomotive was in use where it was attached to other cars on service tracks and had already been serviced and maintained). Nor was the train being readied for imminent departure. *See, e.g., Adams v. Consolidated Rail Corp.,* 1994 WL 570236, at *3 (E.D.Pa. Oct. 18, 1994) (locomotive not in use where it was motionless on side track and plaintiff failed to produce any evidence that it "was going to be used within a short time after [he] sustained his injuries"); *cf. Angell,* 618 F.2d at 261–62 (train in use where plaintiff was injured while uncoupling the readied engine in preparation for moving it to a nearby track to pull another train within a few hours).

Moreover, Crockett appears to have been the only employee working on the train. *See, e.g., Tisneros v. Chicago & N.W. Ry.,* 197 F.2d 466, 467 (7th Cir.), *cert. denied,* 344 U.S. 885, 73 S.Ct. 184, 97 L.Ed. 685 (1952); *cf. Raudenbush,* 160 F.2d at 368 (engineer remained in locomotive and crew was in immediate vicinity). Although the train was not undergoing significant repairs while in a separate repair facility, *cf. Pinkham,* 874 F.2d at 881; *Steer,* 720 F.2d at 976–77, Crockett's work on the yard track is best characterized as light maintenance, *see Estes*

*v. Southern Pac. Transp. Co.,* 598 F.2d 1195, 1196, 1198–99 (10th Cir.1979) (locomotive was not in use where placed on service track for fueling, sanding, and light maintenance, where units were on "two-hour call," and most units were on service track for a short period of time). Accordingly, because the train was not in use, we affirm the district court's refusal to instruct the jury as to liability under the BIA.

## 2. Future Pain and Suffering

■ Crockett next contends that the jury reached an irreconcilably inconsistent conclusion by failing to award her future pain and suffering, in light of its award of future medical expenses, presumably in contemplation of knee replacement surgery. Given Dr. Benatar's uncontroverted testimony that the surgery would be necessary only when the pain increased, Crockett contends that the jury could not logically award all costs for the surgery and no damages for future pain and suffering. We agree.

■ When a jury returns a verdict by means of answers to special interrogatories, the findings must be consistent with one another, as they form the basis for the ultimate resolution of the action. *See Auwood v. Harry Brandt Booking Office, Inc.,* 850 F.2d 884, 890 (2d Cir.1988). "[O]ur responsibility as a reviewing court is to adopt a view of the case, if there is one, that resolves any seeming inconsistency" between the jury's answers. *Id.* at 891 (quotation omitted). If, however, "the jury's answers cannot be harmonized rationally, the judgment must be vacated and a new trial ordered." *Brooks v. Brattleboro Memorial Hosp.,* 958 F.2d 525, 529 (2d Cir.1992).

In *Brooks,* we held that the jury's answers to special interrogatories were "irreconcilably inconsistent" when the jury awarded all of plaintiff's medical expenses and nothing for her undisputed pain and suffering. *Id.* at 529–30. The main issue in *Brooks* was causation, specifically, whether defendants' delay in diagnosing and treating plaintiff's bacterial infection caused her to incur medical expenses and pain and suffering. *See id.* at 530. We concluded that because the jury found that defendants' negligence caused "*all*

of [plaintiff's] medical expenses, … it [was] irreconcilably inconsistent for the jury to have awarded zero damages for her contemporaneous, undisputed pain and suffering." *Id.; see also Davis v. Becker & Assocs., Inc.,* 608 F.2d 621, 623 (5th Cir.1979) (jury award to plaintiff of all past lost wages and two years of future lost wages is inconsistent with failure to award any amount for plaintiff's uncontroverted pain and suffering).

In the case at bar, the only testimony regarding knee replacement surgery was from Dr. Benatar, who stated that Crockett would require the surgery in the event that the pain in her knee increased. Benatar testified that the cost for that surgery would be roughly $34,000, almost exactly the amount the jury ultimately awarded for future medical expenses. Logic dictates that because the jury anticipated future knee surgery it also should have awarded some amount for future pain and suffering. The only reason that Crockett would undergo knee replacement surgery was if her pain increased. The jury awarded Crockett $70,000 for the pain she had already encountered. It was inconsistent then to award no money for the future pain that was the necessary precedent to the surgery that the jury found Crockett required. Because the jury's findings were irreconcilably inconsistent, we vacate and remand for a new trial. *See Brooks,* 958 F.2d at 530; *Auwood,* 850 F.2d at 891.

■ Finally, we address whether the new trial should encompass all issues or solely the issue of damages. *See Brooks,* 958 F.2d at 530; Fed.R.Civ.P. 59(a). When a jury arrives at its decision by special interrogatories, a court generally may be "reasonably certain that an erroneous verdict was reached independent of another verdict, [and] a partial retrial may be in order." *Akermanis v. Sea–Land Serv., Inc.,* 688 F.2d 898, 906 (2d Cir.1982), *cert. denied,* 461 U.S. 927, 103 S.Ct. 2087, 77 L.Ed.2d 298 (1983); *see also Crane v. Consolidated Rail Corp.,* 731 F.2d 1042, 1050 (2d Cir.) (where special interrogatories are employed, "error with respect to one issue will ordinarily not constitute reason to retry an issue that was separately determined."), *cert. denied,* 469 U.S.

854, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984). In the case at bar, we believe that the jury's inconsistent answers only warrant a new trial for damages, and not on liability as well.

While we have noted that in some cases the issues of damages and liability are so interwoven that one cannot be submitted to the jury on retrial without the other, *see Brooks,* 958 F.2d at 531 (jury had to consider "the reason for and the effect of the delay in diagnosis and treatment—issues crucial to liability as well as to damages"), such a situation does not exist in the present case. The amount of damages sustained by Crockett is conceptually distinct from her comparative negligence in causing the accident in the first place. Therefore, on retrial the jury need only determine what damages Crockett sustained due to her fall.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the district court as to the issue of liability, but vacate and remand for a new trial on damages.