## LYLE v. ATCHISON, T. & S. F. RY. CO. et al.
### No. 9801.

United States Court of Appeals
Seventh Circuit.

Oct. 7, 1949.

Rehearing Denied Nov. 3, 1949.

Thomas J. Barnett, Philip E. Von Ammon, Floyd J. Stuppi, Chicago, Ill., for appellants.

Julius S. Neale, Marion J. Hannigan, Walter E. Moss, Chicago, Ill., for appellee.

Before KERNER and FINNEGAN, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendants appeal from a judgment rendered upon the verdict of a jury awarding plaintiff damages for personal injuries incurred while servicing a railroad locomotive. The complaint averred that defendants had violated the Boiler Inspection Act, 45 U.S.C.A. § 23, in that they had permitted oil, grease and foreign substances to remain on the steps of a ladder on the tender of the locomotive in violation of the statute. At the trial plaintiff relied and sought recovery only upon the basis of defendants' violation of this Act.

Plaintiff was employed by defendant Gulf, Colorado & Santa Fe Railroad Company as a "hostler's helper," whose duty it was to service locomotives with sand, water, fuel oil, lubricating oil and waste for the journals and to clean the locomotives of any foreign substance such as oil and grease on the tender or elsewhere, in short, to service locomotives and put them in readiness for use on the railroad.

On January 10, 1946, the engine, owned by defendant Atchison, Topeka & Santa Fe but being used on the line of defendant Gulf, Colorado & Santa Fe, was brought into Gainesville, Texas, about eight o'clock in the evening. The night was misty, the ground damp and the surface of the locomotive and tender wet. The engineer and

fireman left the locomotive and a hostler then took charge and drove the locomotive first to the sand chute, where plaintiff filled the sand dome, then to a spot near the water spout, where plaintiff filled the tank with water and then to another place where plaintiff filled the fuel tank. From the latter point the hostler moved the engine to the inspection pit near the roundhouse where it came to rest, the hostler then leaving the locomotive to plaintiff for further service, plaintiff being the only person thereafter on it.

Plaintiff proceeded with his duties, procured lubricating oil from a supply house for the lubricators and waste for the journals and finished his work. He testified that after he had completed his task, he remembered a pail on top of the tender which should have been stored away; that he then climbed upon top of the tender, got the bucket and a lid-hook, put them in their proper places and started down the steps running from the top of the tender to the deck of the locomotive cab, a distance of some four or five feet. This so-called ladder consisted of two fan-shaped iron steps and, on either side, a hand rail to use in climbing up or down the steps. While descending plaintiff either missed his footing or slipped on the top step and fell to the deck of the locomotive cab some four or five feet, receiving the injuries complained of.

Defendants contend that the judgment should be reversed for several reasons but, in view of our conclusion, we have found it necessary to consider only the contention that the locomotive was not in use at the time of the accident so as to bring it within the purview of the Boiler Inspection Act.

Plaintiff's cause of action depends entirely upon the liability asserted under the Act, 45 U.S.C.A. § 23, the pertinent part of which is: "It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, * * *."

Whether, at the time of the injury, the locomotive was "in use" or being "used on its line" depends upon certain undisputed facts. The engine had reached Gainesville and there ended its run. The engineer and fireman had left and the hostler had thereupon taken over, moving the engine eventually to the service track and inspection pit at the round-house to be serviced by plaintiff before it was again put in use. There plaintiff completed his duties including, as we have seen, placing sand, oil and water in their proper places, filling the lubricators and, in general, doing anything else the engine needed to have done in order to put it in condition for use. He was the only person on or about the inactive, idle locomotive and his complete duty was to service the engine so that it would be in readiness for future use on another run. Whether there was thereafter, in fact, any such use is not shown by the record.

Liability under the Act in question, like that under the Safety Appliance Act, 45 U.S.C.A. § 1 et seq., depends not upon negligence but is an absolute one to obey the statutory requirements. For this reason Congress, obviously, in framing each of the Acts, in consideration of the unconditional duty to have cars and locomotives in such condition as not to put in peril life or limb while in use imposed upon the carrier, likewise limited the absolute liability to cars and locomotives while in use "on the line." In other words, when a locomotive or car is in "use on the line," the mandatory duty of the carrier attaches and when the car or engine is not so in use then the duty under the express provision of the statute does not exist.

The simple question is, was the locomotive in use? To that question, we think, there can be but one answer. Clearly the use of the engine in transportation had for the time being been abandoned; its use in commerce had come to an end. Its operator had turned it over to the roundhouse employees, the hostler had taken charge and moved it to the inspection pit

at the round-house and there turned it over to plaintiff whose duty it was to make the service and to prepare the engine for future further use. If grease and oil or other foreign matter were improperly on the locomotive, it was his duty to remove it if possible and, if not, to report it. It is opposed to reality to say that under such circumstances the locomotive was in use so that the mandatory duty imposed by the Boiler Inspection Act then applied. To service an engine while it is out of use, to put it in readiness for use, is the antithesis of using it. To apply the mandatory liability in favor of one who puts an engine in readiness for use is to enlarge and extend the intent of Congress in enacting the legislation.

This conclusion, we think, is in line with the decisions of other courts, both state and national, interpreting the provisions of this statute. Thus, in New York C. & St. L. Ry. Co. v. Kelly, 7 Cir., 70 F.2d 548, 551, certiorari denied 293 U.S. 595, 55 S.Ct. 110, 79 L.Ed. 689, where a car had been put in a specific place for repairs, this court said "since it is clear that the car was not in use, it was erroneous to submit the case to the jury." In Sherry v. Baltimore & O. Ry. Co., 6 Cir., 30 F.2d 487, 489, certiorari denied 280 U.S. 555, 50 S.Ct. 16, 74 L.Ed. 611, the court, after reciting that the defective car complained of had been stored on a side track for repairs and service said: "The defectively equipped car not having been in use within the meaning of the Safety Appliance Act, at the time of the injury to the plaintiff, the verdict was properly directed for the defendant." Other opinions to the same effect are to be found in Brady v. Wabash Ry. Co., 329 Mo. 1123, 49 S.W.2d 24, 30, 83 A.L.R. 655; Harlan v. Wabash R. Co., 335 Mo. 414, 73 S.W.2d 749, 753; Flack v. Atchison, T. & S. F. R. Co., 285 Mo. 28, 224 S.W. 415, 423, certiorari denied 256 U. S. 690, 41 S.Ct. 449, 65 L.Ed. 1173; Compton v. Southern Pac. Co., 70 Cal.App.2d 267, 161 P.2d 40, 46; Baltimore & Ohio R. Co. v. Hooven, 6 Cir., 297 F. 919, 924; Kaminski v. Chicago M. & St. P. R. Co., 180 Minn. 519, 231 N.W. 189, 192; McCalmont v. Pennsylvania R. Co., 6 Cir., 283 F. 736, certiorari denied 260 U.S. 751, 43 S.Ct. 250, 67 L.Ed. 495; Ehalt v. McCarthy, 104 Utah 110, 138 P.2d 639, 644. Cases such as Texas & P. Ry. Co. v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 and Chicago G. W. Railroad Co. v. Schendel, 267 U.S. 287, 45 S.Ct. 303, 69 L.Ed. 614 and others cited by plaintiff are clearly distinguishable from the instant case in that the cars with which those cases were concerned were still in use on the tracks of the companies. In each case the question was whether the car was in use, or whether it had been withdrawn from service and, in each of them, the facts were such that the court could not say that use had terminated; the cars or locomotives were still in commerce.

Remembering that the liability under the Act is absolute, that the circumstances under which liability attaches is accordingly limited to the words that the Congress has employed in defining those limited circumstances, it seems clear to us that there is but one answer to the question presented and that is that the locomotive in question was not in use within the meaning of the Boiler Inspection Act at the time of the injury. Consequently plaintiff failed to make out a prima facie case.

From the foregoing, it is clear that the trial court should have directed a verdict for defendants. Accordingly the judgment is reversed with direction to the District Court to proceed in accord with the announcements herein contained.