## TISNEROS v. CHICAGO & N. W. RY. CO.
### No. 10534.

United States Court of Appeals
Seventh Circuit.

May 14, 1952.

Rehearing Denied July 3, 1952.

Lowell Hastings, Drennan J. Slater, John L. Davidson, Jr., Chicago, Ill., for appellant.

James A. Dooley, Chicago, Ill., for appellee.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff's suit against his employer to recover damages because of the latter's alleged violation of the Boiler Inspection Act, 45 U.S.C.A. § 23, having resulted in a judgment in his favor, defendant appeals. It rightfully asserts that no question of negligence is involved and that its duty under the statute, if applicable, is absolute. It seeks reversal, however, because, as it contends, (1), the icy condition of the steps and grabirons of the locomotive complained of did not constitute "an unnecessary peril to life or limb of railroad employees" within the meaning of the Act, inasmuch as such condition was caused solely by the weather encountered in interstate transportation; (2), the locomotive, having been lodged in a round-house stall, was not being "used on its line," as required before an action under the Act accrues and, (3), the court improperly instructed the jury. In view of our conclusion, it is necessary to consider only the second contention.

On March 9, 1950, about 4:15 A.M. defendant's locomotive No. 3031 reached defendant's Chicago yards, after the end of its

run in service from Omaha to Chicago, and was taken thence to the round-house and there placed in stall 32 for plaintiff's attention. He was a so-called "fire-up" man and fire "knocker." He testified that he worked from 12 midnight until 8 A.M.; that it was his duty to look over a locomotive placed in a stall, ascertain whether it had fire in the fire-box, keep the fire up, if the engine was to go out on the road again, and, "if they didn't have to use it," "knock the fire out." His job, he said, was to see "that the engine is ready to go out on the run"; to "make. it ready to go." About 4:30 A.M., according to his testimony, some ten minutes after the locomotive had been placed in the stall, he proceeded to the performance of his duties. He observed that the steps were icy, but started to climb them, in order to reach a position where he could see the fire-box and determine what he should do. Before he arrived at that point, however, he slipped, fell and was severely injured. As he never reached the fire-box he did not know whether there was a fire. He immediately became ill from his injury and was taken to a hospital; he did not know when the engine left the round-house. He defined stalls as places "where they put the engines when they come in from the outside," to get them "off of the tracks." No one was with him, but another workman was on locomotive 1569 occupying stall 31, next to him.

The record is silent as to the exact time when the locomotive left the round-house. We do know, however, that some time after the accident, on the same day, it was inspected, and that, later in the day, it was taken to the yards, and about 8 P.M. started for Clinton, Iowa, to pick up east-bound freight.

It is clear, therefore, that, so far as this record discloses, the locomotive was, at the time of the accident, not in use on defendant's line. It had ended its service trip at the yards and had then been taken to a stall in the round-house, there to be taken care of by plaintiff, either by building up and maintaining the fire, to have it in condition for future use, or to put out the fire, if no early return to use was contemplated.

We observed in Lyle v. Atchison, T. & S. F. Ry. Co., 7 Cir., 177 F.2d 221, 222, certiorari denied 339 U.S. 913, 70 S.Ct. 574, 94 L.Ed. 1339, "Plaintiff's cause of action depends entirely upon the liability asserted under the Act, 45 U.S.C.A. § 23, the pertinent part of which is: 'It shall be unlawful for any carrier to· use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and. safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, * * *.' Whether, at the time of the injury, the locomotive was 'in use' or being 'used on its line' depends upon certain undisputed facts."

The same situation confronts us here. The engine had reached the yards and there ended its run. The engineer and fireman had left, and the engine, idle and not in operation, had been placed in a stall in the round-house. Plaintiff then started to perform his duty,—build up the fire or "knock" it out. He was the only employee on or about the idle and inactive locomotive. Certainly it can not be said that in such a situation the engine was in use on defendant's line.

In Lyle v. Atchison, T. & S. F. Ry. Co., supra, we said: "The simple question is, was the locomotive in use? To that question, we think, there can be but one answer. Clearly the use of the engine in transportation had for the time being been abandoned; its use in commerce had come to an end. Its operator had turned it over to the round-house employees, the hostler had taken charge and moved it to the inspection pit at the round-house and there turned it over to plaintiff whose duty it was to make the service and to prepare the engine for future further use. * * * It is opposed to reality to say that under such circumstances the locomotive was in use so that the mandatory duty imposed by the Boiler Inspection Act then applied. To service an engine while it is out of use, to put it in readiness for

use, is the antithesis of using it. To apply the mandatory liability in favor of one who puts an engine in readiness for use is to enlarge and extend the intent of Congress in enacting the legislation." We are unable to distinguish the facts of this case. The quoted language is directly applicable. The cases cited in our former opinion supporting our reasoning need not be cited again. Since that decision, the same result was reached in Atlantic Coast Line R. Co. v. Edge, 1950, 81 Ga.App. 606, 59 S.E.2d 533.

Inasmuch as plaintiff failed to bring himself within the statute, the District Court should have directed a verdict for defendant. The judgment is reversed.