**Earl SIMPKINS, Plaintiff,**

v.

**The BALTIMORE & OHIO RAILROAD COMPANY, Defendant.**

**No. C–1–74–380.**

United States District Court,
S. D. Ohio, W. D.

March 11, 1976.

Philip J. Schneider, Cincinnati, Ohio, for plaintiff.

James L. O'Connell, Cincinnati, Ohio, for defendant.

## MEMORANDUM OPINION ON CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT

HOGAN, District Judge.

This is an action under the Federal Employers' Liability Act, 45 U.S.C. § 51, et seq. and the Safety Appliance Act and Locomotive Boiler Inspection Act, 45 U.S.C. § 1, et seq. to recover for injuries sustained by plaintiff, an employee of the defendant Baltimore and Ohio Railway Company. Before the Court are cross motions for partial summary judgment as to count two of the complaint, the count dealing with the Safety Appliance Act and the Locomotive Boiler Inspection Act.

The facts of the case are undisputed for the most part. Plaintiff was a machinist for the defendant in its Stockyards Roundhouse at Cincinnati, Ohio. Among the duties plaintiff performed were the inspection of locomotives' oil and water levels and the addition of oil and water to the engine if the levels were not proper.

On March 5, 1974, plaintiff was checking Southern Pacific Diesel Unit No. 8603 when he discovered the oil level was low. Plaintiff shut down the diesel engine and then proceeded to unscrew a filler cap in an air compressor to add the oil. While removing the cap a burst of pressure blew the cap off and plaintiff fell from the engine onto a concrete apron and was injured.

Both parties have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on count two of the complaint. Paragraph II of count two avers:

> Plaintiff further alleges that he was injured by reason of the negligence of the defendant and its employees and its violation of the Safety Appliance Acts and Locomotive Boiler Inspection Act of the United States in that it hauled or permitted to be hauled or used on its line of railway, an engine which was equipped with a defective air compressor or defective equipment so that the plaintiff was caused to be injured as hereinafter set forth.

Title 45 U.S.C. § 23 provides:

It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of sections 28 to 30 and 32 of this title and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for.

Defendant claims it is entitled to summary judgment on count two because engine no. 8603 was not in use "on its line" at the time plaintiff was injured. Plaintiff, on the other hand, argues that he is entitled to summary judgment on count two because the locomotive was being used on defendant's line at the time plaintiff was injured.

Plaintiff points to the facts set forth above and argues that he was inspecting the engine when the cap blew and therefore *Brady v. Terminal R. R. Ass'n*, 303 U.S. 10, 58 S.Ct. 426, 82 L.Ed.2d 614 (1938) controls our decision. Plaintiff also argues that the engine "was not at a place of repair" when the cap blew so it was still "in use." *Southern R. R. Co. v. Bryan*, 375 F.2d 155 (8th Cir.), *cert. denied*, 389 U.S. 827, 88 S.Ct. 82, 19 L.Ed.2d 83 (1967). Defendant points to the same facts and argues that plaintiff was "servicing" the engine and servicing as well as repairing is enough to take the engine off defendant's "line." *Tisneros v. Chicago & Northwestern Ry. Co.*, 197 F.2d 466 (7th Cir.), *cert. denied*, 344 U.S. 885, 73 S.Ct. 184, 97 L.Ed. 685 (1952); *Lyle v. Atchison, Topeka & Santa Fe Ry. Co.*, 177 F.2d 221 (7th Cir. 1949), *cert. denied*, 339 U.S. 913, 70 S.Ct. 574, 94 L.Ed. 1339 (1950).

We have examined the cases cited by the parties and we believe the cases cited by the defendant are more analogous to the facts presented by this action.

Before examining the facts, the court in *Lyle* noted that liability under both the Safety Appliance Act and the Boiler Inspection Act was absolute. The court then concluded that Congress, in consideration of the carrier's unconditional duty to have locomotives in safe condition while in use, limited the absolute liability to locomotives while in use on the carrier's line. Thus, when a locomotive is in "use on the line," the mandatory duty of the carrier attaches and when the engine is not so in use then the duty under the statute does not exist.

The court then turned to the facts and stated:

> Clearly the use of the engine in transportation had for the time being been abandoned; its use in commerce had come to an end. Its operator had turned it over to the round-house employees, the hostler had taken charge and moved it to the inspection pit at the round-house and there turned it over to plaintiff whose duty it was to make the service and to prepare the engine for future further use. . . . It is opposed to reality to say

that under such circumstances the locomotive was in use so that the mandatory duty imposed by the Boiler Inspection Act then applied. *To service an engine while it is out of use, to put it in readiness for use, is the antithesis of using it.* To apply the mandatory liability in favor of one who puts an engine in readiness for use is to enlarge and extend the intent of Congress in enacting the legislation. 177 F.2d at 222–23. (emphasis added).

The court then held that the engine had been withdrawn from service at the time of plaintiff's fall and therefore the trial court should have directed a verdict for the defendants. It is interesting to note that the facts upon which the *Lyle* court found that the engine had not been in use on the line are nearly identical with the facts presently before us. In *Lyle* the engine had been moved to the service track and round-house inspection pit to be serviced by the plaintiff before it was again put in use. The court described the plaintiff's duties as "placing sand, oil and water in their proper places, filling the lubricators and, in general, doing anything else the engine needed to have done in order to put it in condition for use."

The *Lyle* decision was followed in *Tisneros v. Chicago & Northwestern Ry. Co.*, *supra*. The *Tisneros* court found that:

> The engine had reached the yards and there ended its run. The engineer and fireman had left, and the engine, idle and not in operation, had been placed in a stall in the round-house. Plaintiff then started to perform his duty,—build up the fire or "knock" it out. He was the only employee on or about the idle and inactive locomotive. Certainly it cannot be said that in such a situation the engine was in use on defendant's line. 197 F.2d at 467.

The court then held that the plaintiff had failed to bring himself within the statute and reversed the district court for not directing a verdict for the defendant railroad company.

In both *Lyle* and *Tisneros*, as well as the case before us, the engine was located on a

**616**

track devoted primarily to maintenance, inspection and repair activities and all the plaintiffs were engaged in servicing the engine when their respective mishaps occurred. We believe these facts distinguish the case before us from the cases cited by the plaintiff. For example, in *Brady v. Terminal R. R. Ass'n, supra*, the plaintiff was an inspector who was injured while inspecting a string of cars to determine if his employer should accept the cars. The Court found that the cars were located on a receiving or side track

   . . . temporarily pending the continuance of transportation. If not found to be defective, it would proceed to destination; if found defective, it would be subject to removal for repairs. It is not a case where a defective car has reached a place of repair. 303 U.S. at 13, 58 S.Ct. at 428.

The Court held that the cars were merely temporarily motionless and had not therefore been withdrawn from use.

In *Southern R. R. Co. v. Bryan, supra*, the plaintiff was injured while helping to place a derailed and heavily damaged engine back on the tracks so that it might be moved to a repair facility. The *Bryan* court held that getting the locomotive back on the track in the event of derailment was an integral part of its use.

In our case plaintiff was injured while servicing an engine which had been placed in an inspection pit at the round-house. We believe the engine had therefore been withdrawn from service and was not in use on defendant's line when the injury occurred. Accordingly, we will grant defendant's motion for partial summary judgment as to count two of the complaint and deny plaintiff's motion for partial summary judgment. An appropriate entry may be presented.

IT IS SO ORDERED.