Kenneth V. ANGELL, Appellee,

v.

The **CHESAPEAKE AND OHIO RAIL-WAY COMPANY**, Appellant.

No. 79-1348.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 8, 1980.

Decided March 27, 1980.

Fred Adkins, Huntington, W. Va. (Barbara L. Ayres, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W. Va., on brief), for appellant.

Donald L. Rudquist, Minneapolis, Minn. (DeParcq, Anderson, Perl, Hunegs & Rudquist, Minneapolis, Minn., Lawrence J. Lewis, Levy & Lewis, Huntington, W. Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WIDENER and HALL, Circuit Judges.

K. K. HALL, Circuit Judge:

This is an appeal by the Chesapeake and Ohio Railway Company (C & O) from a decision of the district court that, as a matter of law, the accident in question was within the purview of the Boiler Inspection Act (the Act), 45 U.S.C. § 23. The trial court found that under the facts and circumstances in the case, the company's diesel engine was "in use" within the meaning of

the statute at the time of the accident. After being instructed of the absolute liability under the Act,[1] the jury found in favor of the injured employee and the court entered judgment for him and against the railroad. We affirm.

Kenneth Angell, a machinist for the railroad for over 30 years, was injured on June 20, 1977, when a blast of high pressure air from a defective air brake valve damaged his right ear while he was assisting in switching diesel engines at the railway facilities near Hinton, West Virginia. The engine in question, No. 7567, had been brought to the facility and transferred from the Transportation Department to the Mechanical Department around 3:30 p. m. that afternoon for sand, fuel and routine inspection. The engine was placed on a service track which was then "blue flagged," meaning that the switches at both ends of the track section were locked closed, derailers were put in place, and blue flags were set up near the switches.

Engine No. 7567 was sanded and fueled during the day. At approximately 8:20 p. m., Angell was assisting the hostler, the engineer in the maintenance area, in moving Engine No. 7567 and another engine to a nearby track where they would form part of the "consist" (number of engines) to pull Train No. 95 later that night. Angell was uncoupling the two engines and had just turned the air brake exhaust valve prior to separating the air hoses when he was injured by a blast of high pressure air (140 p.s.i.). Prior to finishing his shift, he re-ported the accident and was told to see a doctor the next day. The hostler moved Engine No. 7567 to its position in the consist, and Train No. 95 left Hinton at 10:30 p. m.

The evidence at trial disclosed that because of earlier problems with the air brake valve, the company had taken steps to install an L-shaped section to divert the flow of air back under the engine and away from the person operating it. Angell was aware of this valve problem and had been instrumental in bringing it to the company's attention. However, the modification on Engine No. 7567 was missing, having apparently come loose and fallen off.

■ C & O contends that such circumstances place Engine No. 7567 outside the scope of the Act because it was not "in use" on the line of the railroad at the time of the accident. The railway cites several cases where an employee, injured while performing services or repair functions on a locomotive, was denied coverage under the Act. *E. g., Tisneros v. Chicago & Northwestern Railway Co.,* 197 F.2d 466 (7th Cir. 1952); *Lyle v. Atchison, Topeka & Santa Fe Railway Co.,* 177 F.2d 221 (7th Cir. 1949); *Simpkins v. Baltimore & Ohio Railroad Co.,* 449 F.Supp. 613 (S.D.Ohio 1976).[2] These cases are distinguishable from the present one since here all servicing, maintenance and inspection work had already been performed and the engine was being moved to its place in the consist.

---

1. The complaint also alleged jurisdiction under the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51 *et seq.,* and the Safety Appliance Act, 45 U.S.C. §§ 1–43. The trial court ruled that the Safety Appliance Act did not apply but did instruct the jury regarding liability under both FELA and the Boiler Inspection Act.

2. In *Lyle,* a hostler's helper who had been lubricating an engine at an inspection pit in a roundhouse fell on some steps on the engine and was injured. The court held that the Act did not apply since "[t]o apply the mandatory liability in favor of one who puts an engine in readiness for use is to enlarge and extend the intent of Congress in enacting the legislation." *Id.* at 223.

*Tisneros* involved a "fire-up" man who was injured in a roundhouse by a fall on the icy steps of an engine which he was readying for its run. The court cited *Lyle* in denying coverage under the Act in such circumstances.

In *Simpkins,* a machinist was inspecting fluid levels on an engine at a roundhouse. While removing a filler cap to add oil, a burst of pressure blew the cap off and he fell onto a concrete apron and was injured. The court refused to allow liability under the Act because "[i]n both *Lyle* and *Tisneros,* as well as the case before us, the engine was located on a track devoted primarily to maintenance, inspection and repair activities *and all the plaintiffs were engaged in servicing the engine when their respective mishaps occurred.*" (emphasis added). *Id.* at 615–16.

The railroad also relies on *Estes v. Southern Pacific Transportation Co.*, 598 F.2d 1195 (10th Cir. 1979)[3] for the proposition that since the engine in this case was not actually engaged in moving interstate or foreign commerce at the time of the accident, it was not "in use" on the railway's line for purposes of the Act. While this argument is persuasive, it is not dispositive of the present factual situation, which appears to be a case of first impression. The problem facing this court is to determine at what point the railway becomes absolutely liable for injuries caused by defective equipment under the Act. Congressional intent[4] and the case law construing the statute clearly exclude those injuries directly resulting from the inspection, repair, or servicing of railroad equipment located at a maintenance facility. The present case involves an injury occurring *after* these excluded activities have been performed and *during* the uncoupling of a "readied" engine in preparation for moving it to a nearby track to pull a train a few hours later.

In support of its position, C & O further points out that the railroad officials do not consider an engine "in service" from the time it is turned over to the Mechanical Department until the engine is "okayed" and a crew from the Transportation Department is "called" for the train to which the engine is assigned. Thus, under the railway's rationale, Engine No. 7567 was "out of service" from 3:30 p. m. until either 9:30 p. m. when the engine was "okayed" or when the crew was called at 10:10 p. m. and was not "in use" at 8:30 p. m. when Angell was injured. The railway's view of this system would restrict the application of the Act by excluding from its coverage those activities occurring between servicing and preparing the engine up until the time the engineer takes the controls.

We feel such interpretation contravenes the legislative purpose behind the Act and that activities such as in the instant case fall within its ambit. Although the engine may not actually be engaged in moving interstate commerce, the intent of the statute is to exclude from its coverage only such functions as are necessary to detect and correct those defective conditions for which absolute liability will be imposed. Clearly, the uncoupling of an engine *after* it has been made ready is not such an exception under the Act. The fact that Angell was helping to move the engine to another track at the direction of railway officials to later pull a train also indicates that the engine was not in need of further repair or servicing and, in reality, had been "okayed" by railway officials for service as contemplated by the Act.

Accordingly, since the facts surrounding this issue were not in dispute,[5] the application of the Act was a matter of law to be decided by the district court. *Pinehurst, Inc. v. Schlamowitz*, 351 F.2d 509 (4th Cir. 1965). Based on the circumstances surrounding the injury, the trial judge could properly find that Engine No. 7567 was "in use" within the meaning of the Act at the time of the accident and instruct the jury as to the applicability of the Act to the case. Finding no reversible error, we affirm.

*AFFIRMED.*

---

3. In *Estes*, a hostler was injured while opening the engine cab door in preparation for moving the engine from the roundhouse service track to an unknown location. The court held that at the time of the accident the engine "was not engaged in moving interstate or foreign traffic and was not, therefore, in use on [the railway's] line for purposes of the Boiler Inspection Act." *Id.* at 1198–99.

4. H.R.Rep.No.1974, 61st Cong., 3d Sess. 3 (1911).

5. During oral argument, counsel for appellant agreed there was no factual dispute for jury consideration.