Wayne S. CARDER, Plaintiff,

v.

**INDIANA HARBOR BELT RAILROAD, Defendant.**

No. 2:00CV490.

United States District Court, N.D. Indiana, Hammond Division.

Jan. 9, 2002.

---

Scott Carlton Sands, Sands & Asssociates, Chicago, IL, for Plaintiff.

Harold Abrahamson, Abrahamson, Reed and Adley, Hammond, IN, for Defendant.

## ORDER

RODOVICH, United States Magistrate Judge.

This matter is before the court on the Motion for Summary Judgment of Count II of the Plaintiff's Complaint filed by the defendant, Indiana Harbor Belt Railroad, on September 14, 2001. For the reasons set forth below, the motion is **GRANTED.**

### Background

On July 12, 1999, the plaintiff, Wayne Carder, was employed as an electrician by the defendant, Indiana Harbor Belt Railroad (IHB), at its locomotive engine repair facility in Hammond, Indiana. At 4:30 A.M., Carder's supervisor directed him to go to IHB's Michigan Avenue Yard in order to make a "yard call" to check on a malfunctioning locomotive. The locomotive was reported as failing to run because of fuel problems. Upon arrival, Carder observed that the engine unit was set out on a regular track. In compliance with IHB safety rules, Carder "blue-flagged" the track in order that other locomotives would not enter the area.

The locomotive to which Carder was assigned was not equipped with a fuel gauge which would have indicated the amount of fuel available. Thus, in order to determine whether the engine was out of fuel, Carder was required to remove and replace a fitting on the fuel pump. In doing so, Carder determined that the engine was, indeed, out of fuel. While replacing and tightening the fitting on the fuel pump, Carder slipped and fell six to eight feet from an unguarded catwalk on the locomotive to the ground. As a result of the fall, Carder sustained physical injuries.

On August 21, 2000, Carder filed a complaint against IHB. Count I of the com-

plaint alleges that IHB was negligent in violation of the Federal Employers Liability Act (FELA), 45 U.S.C. §§ 51–60. Count II alleges that IHB permitted a dangerous and defective locomotive to remain on its line in violation of the Locomotive Act, 49 U.S.C. §§ 20701–20702 (formerly the Boiler Inspection Act, 45 U.S.C. § 23). Specifically, Count II alleges that the locomotive was placed "in use" without proper handrails or guardrails and with a slippery substance on the engine's catwalk. In the present motion, IHB contends that the locomotive was not "in use" for the purposes of the Locomotive Act.

### Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Shanoff v. State of Illinois Department of Human Services,* 258 F.3d 696, 701 (7th Cir.2001); *Haefling v. United Parcel Service, Inc.,* 169 F.3d 494, 497 (7th Cir.1999); *Dempsey v. Atchison, Topeka and Santa Fe Railway Company,* 16 F.3d 832, 836 (7th Cir.1994). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Miller v. Borden, Inc.,* 168 F.3d 308, 312 (7th Cir.1999); *Oates v. Discovery Zone,* 116 F.3d 1161, 1165 (7th Cir.1997). A fact is material if it is outcome determinative under applicable law. *Borcky v. Maytag Corporation,* 248 F.3d 691, 695 (7th Cir. 2001); *Oest v. Illinois Department of Corrections,* 240 F.3d 605, 610 (7th Cir.2001); *Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 344 (7th Cir.1999). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. *Thomsen v. Romeis,* 198 F.3d 1022, 1026–27 (7th Cir.2000); *Plair v. E.J. Brach & Sons, Incorporated,* 105 F.3d 343, 346 (7th Cir.1997); *Dempsey,* 16 F.3d at 836. Finally, summary judgment "will not be defeated simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc.,* 21 F.3d 146, 148 (7th Cir.1994). *See also Miller,* 168 F.3d at 312; *Plair,* 105 F.3d at 347; *United Association of Black Landscapers v. City of Milwaukee,* 916 F.2d 1261, 1268 (7th Cir.1990). *Cf. Hong v. Children's Memorial Hospital,* 993 F.2d 1257, 1261 (7th Cir.1993); *Lac du Flambeau Indians v. Stop Treaty Abuse–Wisconsin, Inc.,* 991 F.2d 1249, 1258 (7th Cir.1993).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)

*See also: Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000); *Celotex Corporation v. Catrett,* 477 U.S. 317,

322–23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986); *Snider v. Belvidere Township*, 216 F.3d 616, 618 (7th Cir.2000); *Haefling*, 169 F.3d at 497–98.

The Locomotive Inspection Act (LIA) provides:

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances—
>
> 1) are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> 2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
> 3) can withstand every test prescribed by the Secretary under this chapter.
>
> 49 U.S.C. § 20701[1]

*See also Weaver v. Missouri Pacific Railroad Company*, 152 F.3d 427, 430 (5th Cir.1998) (noting that the LIA is to be interpreted through past cases interpreting the meaning of the BIA); *Bell v. Illinois Central Railroad Co.*, 2001 WL 722099, at *2 n. 5 (N.D.Ill.2001) (stating that "some courts still refer to the [Locomotive Inspection] Act as the 'BIA' or 'LBIA' ").

■ Whether the IHB is absolutely liable for Carder's injuries turns on whether the locomotive was "in use" at the time of the incident. *See McGrath*, 136 F.3d at 842; *Crockett v. Long Island Railroad*, 65 F.3d 274, 277 (2nd Cir.1995). The determination of whether this locomotive was "in use" at the time of the incident is a question of law for the court to decide. *McGrath*, 136 F.3d at 842; *Crockett*, 65 F.3d at 277; *Pinkham v. Maine Central Railroad Company*, 874 F.2d 875, 881 (1st Cir.1989); *Steer v. Burlington Northern, Inc.*, 720 F.2d 975, 977 n. 4 (8th Cir.1983) *(citing United States v. Thompson*, 252 F.2d 6, 9 (8th Cir.1958)); *Angell v. Chesapeake and Ohio Railway Company*, 618 F.2d 260, 262 (4th Cir.1980). In making this determination, the court must consider the location of the locomotive at the time of the injury and the activity of the injured party. *McGrath*, 136 F.3d at 842 *(quoting Pinkham*, 874 F.2d at 882). *See also Deans v. CSX Transportation, Incorporated*, 152 F.3d 326, 328–29 (4th Cir. 1998); *Paul v. Genesee & Wyoming Industries, Inc.*, 93 F.Supp.2d 310, 316 (W.D.N.Y.2000).

■ In considering the location of the locomotive at the time of the injury, the court must look to whether the locomotive was "engaged in moving interstate or foreign traffic" at the time of the incident. *Garcia v. Union Pacific Railroad Co.*, 835 F.Supp. 1360, 1362 (D.Kan.1993) *(quoting Estes v. Southern Pacific Transportation Company*, 598 F.2d 1195, 1198 (10th Cir. 1979)). *See also Angell*, 618 F.2d at 262 (noting that the LIA/BIA may provide a remedy although the engine may not actually be engaged in moving interstate commerce); *Tisneros v. Chicago & N.W. Ry. Co.*, 197 F.2d 466, 467 (7th Cir.1952), *and*

---

**1.** The Federal Boiler Inspection Act (BIA) was re-codified as the LIA on July 5, 1994. *McGrath v. Consolidated Rail Corporation*, 136 F.3d 838, 840 n. 1 (1st Cir.1998). *See also* 45 U.S.C. § 23 (1994). In effect, the above cited LIA provision replaced the following BIA provision:

> It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenance, thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender and all parts and appurtenances thereof have been inspected
> . . .
>
> 45 U.S.C. § 23 (1994)

*Lyle v. Atchison, T. & S.F. Ry. Co.*, 177 F.2d 221, 222 (7th Cir.1949) (both considering whether a "[locomotive's] use in commerce had come to an end"). However, the court must be weary of "[c]ongressional intent and case law construing the statute clearly [to] exclude those injuries resulting from the inspection, repair, or servicing of railroad equipment located at a maintenance facility." *Angell,* 618 F.2d at 262.

There is no dispute that the locomotive was located on a regular track and not in a roundhouse or maintenance facility. *See, e.g., Estes,* 598 F.2d at 1198–99 (holding that where a locomotive is turned over to a hostler and placed in a roundhouse or maintenance facility, that locomotive no longer is engaged in commerce nor "in use" under the Act). However, the IHB argues that the locomotive was not in use because of its location and because it was "blue flagged." The IHB contends that the locomotive was "placed on a track where it would not impede the regular flow of traffic in the railyard." (Defendant's Brief, p. 8) To support this contention, the IHB notes that Carder stated that "they try to put it on a track where I can get to where I can blue flag it and not interrupt their operations so I can work on it." [2] (Wayne S. Carder Dep. at p. 12) Indeed, Carder did blue flag [3] the locomotive prior to working on it.

Even though the locomotive was not set aside onto a repair track, the blue-flagging of the engine essentially indicated to all around that the engine was being worked on and was not ready to be used. Indeed, "when a train is blue-flagged, no one may move it, and no movement may take place on that track until the person who locked the tracks unlocks it." *Paul,* 93 F.Supp.2d at 316. Blue flagging the locomotive is akin to placing it onto a maintenance track. However, in making the determination as to whether the locomotive was still in use, a blue flagged track alone is not dispositive. *Compare Angell,* 618 F.2d at 261 (holding that while the locomotive was not in a roundhouse or maintenance garage, by using the blue flag the locomotive had been set aside for pre-departure inspection and that it was therefore not in use.) The second factor, Carder's activity during the incident, also must be taken into account.

In addressing the issue of activity, the Seventh Circuit has stated:

> The simple question is, was the locomotive in use? To that question, we think, there can be but one answer. Clearly, the use of the engine in transportation had for the time being been abandoned; its use in commerce had come to an end.... *To service an engine while it is out of use, to put it in readiness for use, is the antithesis of using it.* To apply the mandatory liability in favor of one who puts an engine into readiness for use is to enlarge and extend the intent of Congress in enacting the legislation. (emphasis added)

*Lyle,* 177 F.2d at 222–23

---

2. Although it is unclear from the deposition, presumably "they" refers to either the engine crew or the yard workers.

3. " 'Blue flagged' is a phrase used throughout the railroad industry. The blue signal—usually a blue flag in daylight or a blue light at night—protects employees who might be vulnerable to the movement of the cars by warning other crews not to move trains around a work area." *Paul,* 93 F.Supp.2d at 314 (internal quotations omitted). *See also* 49 C.F.R. §§ 218:23(a), (b) (1999) (providing that where blue signals are displayed to "signify that workers are on, under, or between rolling equipment," the equipment cannot be coupled to, moved, or passed. Nor can the blue signals be hidden by other equipment, and the blue signals only can be removed by the group who had placed it.).

Thus, in determining a locomotive's readiness, the court must look to the immediacy in which the locomotive will return to service. *Compare McGrath,* 136 F.3d at 842 (holding the locomotive to be in use where it was idling on the yard track, being serviced by the engineer as part of his incidental duties, and was ready to move immediately into service), *and Raudenbush v. Baltimore & O.R. Co.,* 160 F.2d 363, 368 (3rd Cir.1947) (holding the locomotive to be in use where "there was an interval of but a few seconds or minutes between the active use of the locomotive and the time of the accident" which caused a member of the yard crews death) *and Zanden v. Norfolk & Western Railway Company,* 1996 WL 699604, at *3 (N.D.Ill. 1996) (holding a locomotive to be in use as it "was to be set in motion within a short period of time," when plaintiff engineer was injured while starting the locomotive) *with Crockett,* 65 F.3d at 277 (holding the locomotive not in use where the injury occurred during a "between run inspection," to a repairman who was the only employee working on the train, and where the engine was not idling), *and Tisneros,* 197 F.2d at 467 (holding the locomotive not in use where it had been turned over to the plaintiff "fire knocker" whose duties included making the locomotive ready for future use), *and Paul,* 93 F.Supp.2d at 316–17 (holding a locomotive not in use where a non-train crew member sustained injuries during pre-departure inspection six hours prior to the train's departure).

■ In the instant case, Carder was employed by IHB as an electrician and not as a member of a locomotive crew. (Plaintiff's Response Brief at p. 1) At the time of his injuries, Carder "was working alone and was engaged in the repair" of the engine. (Complaint at p. 4, ¶ 4) Additionally, the engine could not have been idling at this time—as the nature of the repair was to determine why the locomotive had stopped running. (Plaintiff's Response Brief at p. 1; *See also* Carder Dep. at p. 12) Moreover, Carder was sent to the locomotive at 4:30 A.M. to determine why the locomotive was not running. (Plaintiff's Response Brief at p. 1) This determination took approximately 15 minutes. (Carder Dep. at p. 20) However, the train's crew was not scheduled to arrive for work until at least 6:30 A.M. (Walter McNabb Dep. at p. 20) From these undisputed facts, it is clear that the locomotive was not going to be set in motion within a short period of time, nor was it ready to move immediately into service. The plaintiff's argument that this call merely was like putting gasoline into a car is without merit because Carder did not know whether there was a fuel starvation problem until after he would have completed his inspection.

In sum, because the locomotive was placed on a track so as not to impede the regular operations of the yard, was blue flagged, and Carder was repairing a locomotive that was not ready for immediate service and that was not idling, the defendant's motion for summary judgment must be granted.

For the foregoing reasons, the Motion for Summary Judgment of Count II of the Plaintiff's Complaint filed by the defendant, Indiana Harbor Belt Railroad, on September 14, 2001, is GRANTED.