2020 IL App (1st) 1-19-0279
Nos. 1-19-0279, 1-19-0283 & 1-19-0286 (Cons.)
December 7, 2020

FIRST DIVISION

**NOTICE**: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| KENNETH TRIPP, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee/Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 L 1767 |
| | ) | |
| UNION PACIFIC RAILROAD COMPANY, | ) | Honorable |
| | ) | John Ehrlich, |
| Defendant-Appellant/Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE WALKER delivered the judgment of the court.
Justices Hyman and Coghlan concurred in the judgment.[1]

**ORDER**

¶ 1        *Held*: As a matter of law, when two locomotives have been removed from duty for maintenance, both are in the railyard's designated area for maintenance, and one is moving the other within the maintenance area, both locomotives are in-use within the meaning of federal statutes pertaining to liability for injuries caused by defective rail equipment based on the undisputed facts of this case. To determine whether a locomotive was in-use for purposes of a lawsuit in which a plaintiff alleges that a defendant's violation of federal statutes resulted in an injury, courts should consider several factors, including the location and motion of the locomotive, the activity of the injured party, whether the turnover procedure is complete and

---

[1] Justice Coghlan replaces Justice Griffin who retired after this court issued its original order.

locomotive are ready for inspection, whether maintenance personnel had begun to inspect, and other factors pursuant to federal case law.

¶ 2      In 2016, Kenneth Tripp sued Union Pacific Railroad Company (UP), seeking to recover damages for injuries he suffered while working between two locomotives in 2015 pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C.S. § 51 et seq,. which imposes upon a railroad employer a duty to provide its employees with a reasonably safe place to work. It also provides the only means by which a railroad employee may recover damages from his employer for a work injury resulting from his employer's negligence. Under the FELA, a violation of the Locomotive Inspection Act (LIA), 49 U.S.C.S. § 20701 *et seq*., or the Safety Appliance Act (SAA), 49 U.S.C. § 20302 *et seq*., constitutes negligence as a matter of law on the part of the employer. Each act establish establishes a safety standard or rule, the violation of which gives rise to a cause of action under the FELA, and each only applies if the locomotive in question was "in use" on the railroad's line at the time of the injury.

¶ 3      The circuit court found that one of the locomotives involved in the accident was "in-use," within the meaning of applicable federal statutes, but the other locomotive was not. The parties ask us to answer a question the circuit court certified for appellate review under Supreme Court Rule 308 (Ill. S. Ct. R. 308(a) (eff. Jan. 1, 2015)).

¶ 4                                      I.  BACKGROUND

¶ 5      We adopt the circuit court's statement of background facts:

    "On March 8, 2015, locomotive 8516 (UP 8516) arrived at Union Pacific
    Railroad's Global I yard in Chicago ***

2

*** On the night of March 9, 2015, [a second locomotive,] UP 7269[,] moved to the yard's maintenance pit area. Either before or after the move, UP 7269 was coupled with a second engine to form a 'two pack.'

At the Global I yard, the maintenance pit is located below a line of track specifically designated for maintenance work. The pit is five feet below-grade and permits maintenance machinists to work beneath the elevated locomotives. ***

On March 10, 2015, Kenneth Tripp was working as a Union Pacific conductor at the Global I yard *** At approximately 2:30 a.m., and as directed by Union Pacific, Tripp served as the conductor and Jeff Mapp served as the engineer in moving UP 8516 onto the yard's maintenance pit track. UP 8516 had already been coupled with two other engines to form a 'three pack.' Tripp had been instructed to couple UP 8516 — the three pack's lead engine — to UP 7269 — the two pack's lead engine - and then push all five locomotives to the end of the maintenance pit area. Once there, UP 8516 was to receive routine maintenance while UP 7269 was to be lubricated.

A locomotive may receive maintenance only after a turnover procedure is completed. This procedure begins with the transportation crew getting off the locomotive. At that point, the maintenance crew secures the derail, locks the switch at the end of the track, and raises the blue flag, indicating that the engine is 'in service.'

3

Locomotives are linked together through coupling devices located at the end of the locomotive. A coupling device consists of a knuckle joined at the end of a drawbar that is attached to a housing mechanism on the railcar. The knuckle is a clamp that interlocks with a knuckle on another railcar to join the two together. Railcars cannot be joined if both knuckles are closed; consequently, railroad workers must open at least one knuckle before coupling railcars together.

Tripp and Mapp succeeded in coupling UP 8516 and UP 7269 over the maintenance pit. Tripp then left the engine to connect the air hoses between the two engines (so that their brakes could be set and released), but the gladhand failed to hold the hoses together. Tripp and Mapp then decided to lift both couplers' pin lifts and decouple the engines. This procedure was necessary so that Mapp could back up the UP 7269 two pack more than 100 feet ***. It was hoped that with the extra distance between the engines, Tripp could determine why the hoses would not stay connected.

After Mapp backed up UP 7269, both he and Tripp returned to UP 8516 to recouple the locomotives. As the UP 8516 three pack crawled toward the UP 7269 two pack, Tripp stood on the front, left corner of locomotive UP 8516 calling out distances over the radio to Mapp, who was controlling the engine in the last of the three pack's locomotives. As the engines approached, Tripp noticed that both knuckles on the lead locomotives had closed, and he knew that at least one knuckle had to be open for the engines to couple. To open the knuckle on UP

4

8516, Tripp took a step down on the engine's ladder where he was standing so that he could pull up the pin lift with both hands. At that point, Tripp's foot came off the ladder step. Tripp fell off the ladder and landed approximately eight feet down into the maintenance pit. Tripp was injured due to the fall.

Tripp eventually left the maintenance pit after his fall. At that point, the machinists implemented the turnover procedure and serviced UP 8516 and UP 72[69].***

On February 19, 2016, Tripp filed a three-count complaint against Union Pacific.*** Count one *** alleges that Union Pacific breached its duty of ordinary care by failing to furnish Tripp with a reasonably safe place to work. *** Count two is brought pursuant to the Safety Appliance Act (SAA), 49 U.S.C. § 20302 [(2000)]. *** Tripp claimed that Union Pacific breached its duty by allowing an engine to remain in-use, although Union Pacific knew or should have known that the coupler did not function properly or was defective. Count three is brought pursuant to the Locomotive Inspection Act (LIA), 49 U.S.C. § 20701, *et seq.* [(2000)] *** He claims that Union Pacific breached its duties because the defective gladhand caused Tripp's injuries."

¶ 6    Tripp sought a summary determination that UP 8516 and UP 7269 were "in use," within the meaning of the SAA and LIA, at the time of his injury. The circuit court explained that the "requirements [of the SAA and the LIA] apply only to railcars that are actually 'in-use.'" The circuit court held: "UP 7269 was *not* in-use but that UP 8516 *was* in-use at the time of Tripp's

5

injury." (Emphasis in original.) The court added, in a separate order, a finding of substantial grounds for a difference of opinion as to whether UP 8516 and UP 7269 were in-use at the time of the injury, and an immediate answer to a certified question would materially advance termination of the case. The court certified for appellate review the following question: "Whether locomotives are 'in-use' as that term is applied in the Locomotive Inspection Act, 49 U.S.C. § 20701 et seq., and the Federal Safety Appliance Act, 49 U.S.C. § 20302, if both locomotives have been removed from duty for maintenance, both are in the rail yard's designated maintenance area, and one is moving the other within the designated maintenance area." Both parties appealed.

¶ 7                                    II. ANALYSIS

¶ 8                                 A.   Jurisdiction

¶ 9        In an order that dismissed a part of the appeal, we held that factual disputes prevented us from reaching the certified question. See *Rozsavolgyi v. City of Aurora*, 2017 IL 121048, ¶ 21. Union Pacific asked us to reconsider this part of the order. Tripp continues to dispute some of the assertions Union Pacific makes in its brief. Although Tripp admits that he fell when UP 8516 was passing over the maintenance pit, he contends that the court should also consider the location of the locomotives in the minutes before the injury when deciding whether the locomotive was in-use. He claims that UP 8516 was outside the maintenance area a few minutes before the injury occurred, and UP 7269 reached the maintenance area only a few minutes earlier. Tripp also contends that the court should consider the use of the other locomotives in the three-pack with UP 8516 and in the two-pack with UP 7269. Tripp claims that all three of

the other locomotives stayed in the yard solely for convenience, and not in preparation for maintenance.

¶ 10          However, Tripp joins Union Pacific's request that we answer the certified question, claiming that under the correct interpretation of the SAA and the LIA, the contested facts make no difference, and both UP 8516 and UP 7269 were in-use even apart from consideration of the other locomotives and the location of the locomotives in the minutes before he fell. Thus, Tripp agrees with Union Pacific that the parties do not dispute the material facts. Because both parties contend that no material facts remain in dispute, we find that we have jurisdiction to hear the Rule 308 appeal. See *Bauer v. Giannis*, 359 Ill. App. 3d 897, 902 (2005).

¶ 11                                    B.   Certified Question

¶ 12          Because this appeal arises under Rule 308, "[w]e are limited to the question certified by the circuit court, which, because it must be a question of law and not fact, is reviewed *de novo*." *Barbara's Sales, Inc. v. Intel Corp.,* 227 Ill. 2d 45, 57-58 (2007). The circuit court posed the issue in the form of a closed-end question which generally requires a "yes" or "no", but the circuit court itself answered neither "yes" nor "no" to the question it formulated. Both UP 8516 and UP 7269 met the criteria of the question: Union Pacific had removed both locomotives from duty on the main track and both were in the maintenance area when Tripp fell. Yet the circuit court held that UP 8516 was in-use and UP 7269 was not in-use at the time of the injury. Thus, the circuit court did not answer its question either "yes" or "no."

¶ 13          We apply the holding of *Balough v. Northeast Illinois Regional Commuter R.R. Corp.*, 409 Ill. App. 3d 750 (2011) and other federal and state cases to answer the certified question.

To determine whether a locomotive is in-use for the purposes of the SAA and the LIA, courts should "apply a multifactor analysis, including the following factors: where the train was located at the time of the accident; the activity of the injured party; whether it is on a track in the rail yard prepared for departure or in the roundhouse for repair; whether it is being moved to a repair location or to a track for departure; and whether servicing and maintenance work have already been performed." *Balough* at 764. As the *Balough* court noted, the court may consider other factors bearing on whether the locomotive counts as in-use. *Id* at 764-767. Other factors include, but are not limited to, whether the locomotive has been formally withdrawn from use and whether it is in possession of operating or transportation crew, rather than the maintenance crew. *Davis v. Burlington Northern Santa Fe Ry. Co.*, 2016 IL App (3) 150464, ⁋ 17.

¶ 14        Federal statutes are to be liberally construed give effect to their main purpose, which is to protect railroad employees and others by requiring the use of safe equipment, and they only apply if the locomotive in question was "in use" on the railroad's line at the time of the injury. The circuit court found that UP 8516 had been coupled with two other engines to form a "three pack," and UP 7269 had been coupled with another engine to form a "two pack." Union Pacific directed Tripp to serve as conductor and Jeff Mapp to serve as the engineer for using UP 8516, the "three pack's" lead engine, to push the "two pack" to the end of the maintenance pit area. The circuit court also found that once in the maintenance area, both UP 8516 and UP 7269 would undergo routine maintenance, and a locomotive does not receive maintenance until the transportation crew exit the locomotive so that the maintenance crew may secure the derail,

8

lock the switch at the end of the track, and raise the blue flag which indicates the locomotive is in for service. This process is known as the turnover procedure. The circuit court noted that UP 8516 was being moved to the track above the maintenance pit while UP 7269 had been in the maintenance pit area a day prior to Tripp's accident, and the machinists began no work on either of the locomotives.

¶ 15 Union Pacific cites *Ledure v. Union Pacific R.R.,* 962 F.3dd 907, 2020 WL 3263897 (June 17, 2020) to support its claim that both locomotives were not in-use. *Ledure* involved a locomotive that "was stationary, on a sidetrack and part of a train needing to be assembled before its use in interstate commerce." *Id* at 910. The locomotive UP 8516 was being used to move other locomotives and locomotive UP 7269 was moved just prior to the accident. Hence, *Ledure* is distinguishable from the case *sub judice*.

¶ 16 The circuit court ruled that UP 7269 was not in-use because it had been in the maintenance pit area a day prior, it was not being used to move another locomotive, and Tripp was not operating UP 7269 at the time of his injury. On the other hand, the circuit court ruled that UP 8516 was in-use because Tripp and Mapp were still on the locomotive at the time of injury, and Union Pacific had instructed Tripp and Mapp, as members of the transportation crew, to couple the locomotives so that the force of UP 8516 could be used to move UP 7269 to the end of the maintenance pit area.

¶ 17 "Whether, at the time of the injury, the locomotive was in-use or being used on its line depends upon certain undisputed facts." *Lyle v. Atchison, T. & S. F. R. Co.*, 177 F.2d 221, 222 (7th Cir. 1949). In *Lyle*, the "operator had turned it over to the roundhouse employees, the

9

hostler had taken charge and moved it to the inspection pit at the round-house, and there turned it over to plaintiff whose duty it was to make the service" *Id*. To the contrary, Tripp and Mapp did not work with the maintenance crew, but instead "had to come into the pit with UP 8516." The circuit court noted that the machinists had not started the turnover procedure or conducted any maintenance work on either locomotive until after Tripp's injury. The circuit court found that Tripp and Mapp had moved both trains immediately prior to the accident, and the maintenance crew had not begun an inspection. In fact, maintenance is not received until after the turnover procedure is complete and a locomotive is ready for service. Pursuant to our de novo review and the circuit court's finding of facts, the circuit erred in finding UP 7269 was not in-use. Both locomotives were in-use at the time of Tripp's alleged injury.

¶ 18                                                III. CONCLUSION

¶ 19            To determine whether locomotives are in-use for purposes of a lawsuit in which a plaintiff alleges that a defendant's violation of federal statutes resulted in an injury, the court should consider the factors listed in *Balough* and in other cases interpreting the LIA and the SAA.

¶ 20            Question answered, cause remanded.